**Sandra Kay PALMER, Plaintiff,**

v.

**UNIVERSITY MEDICAL GROUP, and Standard Insurance Company, Defendants.**

**Civil No. 96–1320–JE.**

United States District Court,
D. Oregon.

July 21, 1997.

Alan S. Graf, Swanson, Thomas & Coon, Portland, OR, for Plaintiff.

Chrys Anne Martin, Lori R. Metz, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for Defendants.

## AMENDED[1] OPINION

JELDERKS, United States Magistrate Judge.

This is an action for benefits brought under the Employee Retirement Income Security Act ("ERISA"). Plaintiff Sandra Palmer was an employee of defendant University Medical Group ("UMG"). During 1994 and 1995 she complained of, and was treated for, back pain. On or about October 25, 1995,

---

1. The original Opinion issued June 13, 1997, has been amended to make clear that the "abuse of discretion" standard applies only if the Plan contains the requisite language conferring discretion upon the Plan Administrator. The amended opinion also omits the paragraph on page 25 of the original opinion that began with "These ERISA benefits claims should be reviewed...." Upon further reflection I have decided that the discussion in that paragraph is dictum better addressed in the context of a motion raising those specific issues.

Palmer resigned her position and filed a claim for long-term disability benefits.

Defendant Standard Insurance Company ("Standard") is the claims administrator for the employee welfare benefit plan providing long-term disability benefits to employees of UMG. Standard also furnished the disability insurance policy that covered plaintiff. Standard denied plaintiff's claim for benefits, both initially and on appeal. Plaintiff then brought this action for judicial review of Standard's decision denying benefits.

At issue today is the scope of discovery. Plaintiff seeks to conduct wide-ranging discovery aimed at establishing that Standard's decision to deny benefits was tainted by a conflict of interest. Plaintiff contends that Standard occupies a dual role. It decides who will receive benefits and also is responsible for paying any benefits that ultimately are awarded. Consequently, plaintiff reasons, Standard has a strong incentive not to award benefits. Defendant Standard vigorously opposes these discovery requests.

## DISCUSSION

### I

In enacting ERISA, Congress established a right to judicial review of benefits decisions. However, Congress failed to promulgate any standard(s) to govern that review. In *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134 (3d Cir.1987), the Third Circuit proposed that benefits decisions be reviewed under an "arbitrary and capricious" standard unless the decision maker was laboring under a conflict of interest, in which case judicial review would be *de novo*. This approach was influenced by traditional trust law principles, whereby a fiduciary's decisions are given considerable deference unless he was thought to have acted in his own interests, in which case his decisions were carefully scrutinized. *Id.* The deference associated with an "arbitrary and capricious" standard was warranted only if the impartiality of the decision maker was unquestioned.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court rejected this approach. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to pro-

tect contractually defined benefits." *Id.* at 113, 109 S.Ct. at 956 (internal citations and punctuation omitted). Adopting the "arbitrary and capricious" standard of review "would require us to impose a standard of review that would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Id.* at 114, 109 S.Ct. at 956.

The Court instead focused upon the language of the Plan. Review of benefits decisions was to be *de novo* unless the Plan expressly conferred upon the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases the "abuse of discretion" standard would apply. *Id.* at 115, 109 S.Ct. at 957. The Court believed that this would simplify the review process by eliminating a number of variables:

> Because we do not rest our decision on the concern for impartiality that guided the Court of Appeals ... we need not distinguish between types of plans or focus on the motivations of plan administrators and fiduciaries. Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest.

*Id.* However, the potential that a decision had been tainted by a conflict of interest could not be ignored entirely:

> Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." Restatement (Second) of Trusts § 187, Comment d (1959).

*Id.* Although the Court's opinion in *Firestone* suggested that most benefits decisions would receive *de novo* review, the opposite has occurred. Plans were quickly amended—often unilaterally—to include the requisite language conferring discretion, which meant that these benefits decisions would be reviewed only for abuse of discretion.

As a result, the courts again were confronted with the prospect of applying a high-

ly deferential standard of review to a decision made by an administrator or fiduciary operating under a possible or actual conflict of interest. This understandably was disconcerting. When a court applies an "abuse of discretion" standard of review, usually it is because a strong presumption of correctness attaches to the underlying decision. For instance, such a standard may be applied when an appellate court reviews certain decisions or findings made by the district court, or when a court reviews the findings or decisions of an administrative agency or a fiduciary. In each case, the decision being reviewed was made by an impartial decision maker who has no personal stake in the outcome.

By contrast, in ERISA cases the courts were being asked to extend the same degree of deference to a decision made by someone who had an interest in the outcome of that decision.[2] It was difficult to reconcile such a policy with the traditional trust doctrine that the courts strictly scrutinize the actions of a conflicted fiduciary, let alone with the *Firestone* Court's admonition that adopting the arbitrary and capricious standard of review "would require us to impose a standard of review that would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Id.* at 114, 109 S.Ct. at 956. Strict application of the *Firestone* rule would seemingly lead to the very result that the *Firestone* Court pronounced unacceptable.

## II

In the aftermath of *Firestone*, there has been widespread agreement in the lower courts that the presence of a conflict of interest is an important consideration in reviewing a benefits decision. However, there is no clear consensus on how to incorporate such a factor into the review process. *See Cham-*

*bers v. Family Health Plan Corp.,* 100 F.3d 818, 825 (10th Cir.1996) ("Since Firestone, all of the circuit courts agree that a conflict of interest triggers a less deferential standard of review. The courts, however, differ over how this lesser degree of deference alters their review process"); *Buttram v. Central States, Welfare Fund,* 76 F.3d 896, 900 n. 6 (8th Cir.1996) (same). The two leading methods are the "presumptively void" and the "sliding scale" approaches.

## A

■ The "presumptively void" approach was developed by the Eleventh Circuit. *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556 (11th Cir.1990), concerned an alleged conflict of interest analogous to the instant case: an insurance company serving as the fiduciary that decided whether to award benefits that would be paid out of the insurance company's assets. *Id.* at 1561. The Eleventh Circuit concluded that there was an "inherent conflict between the roles assumed by an insurance company that administers claims under a policy it issued." *Id.*

> Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business. That is, when an insurance company serves as ERISA fiduciary to a plan composed solely of a policy or contract issued by that company, it is exercising discretion over a situation for which it incurs "direct, immediate expense as a result of benefit determinations favorable to plan participants." We conclude ... that a "strong conflict of interest exists when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims."

---

**2.** In many respects the conflicts faced by ERISA decision makers are analogous to an umpire or referee in a sporting event who has a wager or other financial interest that is contingent upon the outcome of the contest. A reasonable fan might question the impartiality of that official. Alternatively, even if the referee has no direct financial interest—*e.g.,* it is his or her employer that has the immediate pecuniary interest in the outcome—the referee may still believe that his chances for promotion, or being asked to return

the following season, depend at least in part upon the result of the contest. Again, a reasonable fan might question the propriety of such an arrangement. Yet this sort of conflict of interest is often present in ERISA decision making. It therefore is not surprising that the courts have expressed varying degrees of discomfort about this state of affairs, and have concluded that the presence of a conflict of interest is a factor that must be considered in reviewing the fiduciary's decision.

The inherent conflict between the fiduciary role and the profit-making objective of an insurance company makes a highly deferential standard of review inappropriate.

*Id.* at 1561–62 (internal citations and punctuation omitted). However, the *Brown* court rejected the notion that there were only two options: highly deferential review or *de novo* review. Rather, the standard of review varied depending upon the dynamics of the decision making process. *Id.* at 1563–64. Where there is no significant conflict of interest, review is highly deferential, and the fiduciary's decision will be reversed only if it is "completely unreasonable." *Id.* at 1564. By contrast, where there exists a clear conflict of interest, the court will more carefully scrutinize the fiduciary's decision. The *Brown* court established a burden-shifting methodology:

> [W]hen a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest. That is, a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the grounds of its benefit to the class of all participants and beneficiaries.

*Id.* at 1566–67. However, the *Brown* court acknowledged that an insurance company's desire to minimize costs is not necessarily inconsistent with the interests of the majority of plan beneficiaries:

> Of course, the facts may bear out an insurance company's assertion that its inter-

pretation of its policy is calculated to maximize the benefits available to plan participants and beneficiaries at a cost that the plan sponsor can afford (or will pay). *Cf. Griffis,* 723 F.2d at 825 ("Attempts to prevent unanticipated costs that may limit the resources of an employee benefits plan are among the proper concerns of a plan's administrator."). If this is a reasonable proposition, it would satisfy the fiduciary's burden to purge the taint of self-interest * * * * Even a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interests of the participants and beneficiaries. The fiduciary, however, should bear the burden of dispelling the notion that its conflict of interest has tainted its judgment.

*Brown,* 898 F.2d at 1568.[3] The Eleventh Circuit's burden-shifting methodology is commonly referred to as the "presumptively void" test. *See Chambers,* 100 F.3d at 826.

### B

Other circuits have employed a "sliding scale" approach first proposed by the Seventh Circuit in *Van Boxel v. Journal Co. Employees' Pension Trust,* 836 F.2d 1048, 1052–53 (7th Cir.1987) ("[F]lexibility in the scope of judicial review need not require a proliferation of different standards of review; the arbitrary and capricious standard may be a range, not a point. There may be in effect a sliding scale of judicial review of trustees' decisions.")

▪ Under this approach, the reviewing court will always apply an arbitrary and ca-

---

3. In subsequent cases, the Eleventh Circuit has further refined the analysis to be applied in cases where the interpretation of the plan itself is in dispute:

> First, a court must establish whether the claimant has proposed a "reasonable" interpretation of the plan under which he could be covered. If the plan grants the claims administrator discretion to interpret disputed provisions, however, the next step is to consider whether the claims administrator's interpretation was arbitrary and capricious. If the claimant has established a reasonable interpretation, then under contra proferentem, which

requires ambiguities to be construed against the drafter of a document, the claimant's interpretation is taken as correct. Where no conflict of interest is present, a claims administrator's wrong but reasonable interpretation will not be found arbitrary or capricious. However, if a conflict of interest is established, the burden shifts to the administrator to prove that his or her interpretation of the plan was not tainted by self-interest.

*Florence Nightingale Nursing Service, Inc. v. Blue Cross/Blue Shield of Alabama,* 41 F.3d 1476, 1481 (11th Cir.1995) (internal citations omitted.)

pricious (or abuse of discretion) standard, but the court varies the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict. *Chambers*, 100 F.3d at 825. *See also Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 638 (5th Cir.1992) ("We note that the arbitrary and capricious standard may be a range, not a point. There may be in effect a sliding scale of judicial review of trustees' decisions ...—more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is ..."); *Doe v. Group Hospitalization & Medical Servs.*, 3 F.3d 80, 87 (4th Cir.1993) ("In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict"); *Van Boxel*, 836 F.2d at 1052 ("The less likely it is that the trustees' judgment was impaired by their having a stake, however indirect, in the outcome, the less inclined a reviewing court will be to override their judgment unless strongly convinced that they erred.")

## C

It is unclear whether the Ninth Circuit follows the "presumptively void" or "sliding scale" approach, or intends to chart its own course. *See Chambers*, 100 F.3d at 825–26 (citing one Ninth Circuit case that follows the sliding scale approach, and another that adopts the presumptively void approach).

In *Jung v. FMC Corp.*, 755 F.2d 708 (9th Cir.1985), a pre-*Firestone* case, the Circuit observed that where the employer's denial of benefits to a class avoids a very substantial outlay, the fiduciary is operating under a conflict of interest and consequently less deference should be given to the trustee's decision. *Id.* at 711–12. This analysis is consistent with the "sliding scale" approach. The court assumed there was a conflict, and did not require "proof" that the conflict had in fact tainted the fiduciary's decision.

In *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149 (9th Cir.1986), there had been a bitter strike, and the company allegedly was retaliating against the strikers by denying pension benefits. The Circuit again acknowledged that "a lesser degree of deference" is due where the administrator's decision presents "a serious conflict between the interests

of the employer and those of the fund's beneficiaries." *Id.* at 1152. However, the court then declared that:

> To prevail, Dockray must show that the Administrator breached his statutory fiduciary duty to act "for the sole and exclusive" benefit of the fund's beneficiaries, including Dockray. 29 USC § 186(c)(5). The court will weigh the Administrator's rebuttal of Dockray's evidence of bias against the arbitrary and capricious standard. However, the district court should be appreciably more critical of the reasons advanced by the Administrator, and less willing to resolve all ambiguities in the Administrator's favor, than the court would be if the fund were administered by an independent trustee.

*Id.* at 1153. The court therefore utilized the sliding scale approach, but also permitted both sides to introduce evidence regarding the issue of bias. The court further observed that to "prevail, Dockray must prove taint" in the decision to deny him a pension. *Id.* at 1155. *Dockray* thus differed from *Jung* in two important respects: allowing both sides to introduce evidence on the issue of bias, and requiring the plaintiff to prove that the decision had been tainted by the bias.

The Circuit next confronted this issue in *Oster v. Barco of California Employees' Retirement Plan*, 869 F.2d 1215 (9th Cir.1988). In *Oster*, the fiduciary declined to pay benefits in the form of a lump-sum distribution. The court acknowledged that "less deference should be applied" in "some ERISA cases where the employer administers its own plan." *Id.* at 1217. However, this "lesser deference" standard applied only if the "Committee's decision implicates a serious conflict between the interest of the employer and the beneficiaries." *Id.* In *Oster*, the evidence showed that the conflict was not between the claimant and the employer, but between present and future beneficiaries of the Plan. Although any action that enhances the financial viability of a defined benefits plan also aids the employer by reducing the future contributions required to sustain the plan, the *Oster* court was unwilling to assume that trustees of a defined benefit plan are always subject to a conflict of interest. *Id.* at

1217–18. The *Oster* court also observed that while the Committee may have been aware of the inherent potential conflict, there was no evidence that the decision had been tainted by that conflict. *Id.*

*Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534 (9th Cir.1990), was the first significant post-*Firestone* Ninth Circuit decision. Although not the focus of the case, the *Kunin* court summarized the pre-*Firestone* Ninth Circuit rule as follows: "when an administrator had a conflict of interest, then the district court was required to give the determination less deference than ordinarily afforded under the arbitrary and capricious standard." *Id.* at 537. This is consistent with the "sliding scale" approach.

Conflict of interest likewise was not the focus of *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279 (9th Cir.1990). The case is notable, however, because the court treated the impartiality of the fiduciary as a "material fact" upon which the parties had an obligation to present evidence and which, if controverted, might preclude summary judgment. *Id.* at 1286.

By contrast, in *Dytrt v. Mountain State Tel. and Tel. Co.*, 921 F.2d 889 (9th Cir.1990), the circuit reverted to the *Jung* formula. Because the employer was also the plan administrator, and the decision would have a financial impact upon the employer, the court found that there was a conflict of interest and more closely scrutinized the decision in question without requiring the plaintiff to first prove that the conflict had in fact tainted the decision. *Id.* at 894. In *Eley v. Boeing Co.*, 945 F.2d 276 (9th Cir.1991), the court reiterated that "if the employer is the administrator, a conflict ordinarily exists." *Id.* at 279. Similarly, in *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir.1992), the circuit confirmed that "less deference applies when the administrator's decision involves a 'serious conflict' between the administrator and the employee," and that this rule had survived *Firestone*. *Bogue*, 976 F.2d at 1325.

> Because the great deference accorded a plan administrator arises in part from the assumption of trust law that the trustee has no pecuniary interest in his decisions, proof that the trustee does have such interest correspondingly strengthens the court's level of review.

*Id.* at 1325 n29. The *Bogue* court found that there were two conflicts of interest present, and therefore applied the less deferential standard of review. *Id.* at 1325. However, the court concluded that the administrator's decision was proper and therefore affirmed.

In *Taft v. Equitable Life Assurance Society*, 9 F.3d 1469 (9th Cir.1993), the court reiterated that "[b]ecause Equitable was Taft's employer, we 'therefore impose a more stringent version of the abuse of discretion standard' to Equitable's decision." *Id.* at 1474. However, the court then observed that the plaintiff "presented no evidence, and never even suggested, that Equitable acted in bad faith or had improper motives ... In the absence of any such evidence, we see no reason to depart from our conclusion that Equitable did not abuse its discretion." *Id.* The court also suggested that "the primary function of the heightened standard of review appears to be enabling plaintiffs to defeat summary judgment." *Id.*

Although emphasizing that the plaintiff had offered no evidence of bad faith or improper motives, the *Taft* court also held that review was limited to the administrative record reviewed by the plan administrator and the district court erred by examining any other evidence. *Id.* at 1471–72.

> A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal.

*Id.* at 1472 (citation omitted). The *Taft* court appeared not to recognize the potential tension between the twin positions that it had articulated: simultaneously limiting review to the administrative record while requiring the plaintiff to present evidence of bad faith or improper motives.

In *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir.1993), the circuit reverted to the *Jung–Dytrt* formulation. Instead of requiring the plaintiff to prove that the decision actually had been tainted by the conflict of interest, the court assumed that a conflict of interest existed because almost all

the Committee members were managers for the employer. The panel therefore gave heightened scrutiny to the Committee's interpretation of the plan. *Watkins,* 12 F.3d at 1524–25. In *Barnett v. Kaiser Foundation Health Plan,* 32 F.3d 413 (9th Cir.1994), the court declined to apply heightened scrutiny because it determined that the fiduciary did not have a conflict of interest; consequently, the court did not consider whether the plaintiff must also prove that the conflict tainted the decision. *Id.* at 416.[4]

### D

By the end of 1994, the Ninth Circuit was consistently applying the "sliding scale" approach to cases involving a conflicted fiduciary. Less clear was (1) whether the existence of a conflict of interest would be presumed in certain situations, or if the existence of a conflict was a material issue of fact that had to be proven in each case, and (2) whether the sliding scale would be applied whenever a conflict of interest existed, or if the plaintiff had the burden of demonstrating that the decision actually had been tainted by the conflict. In addition, there was some inherent tension between the rule that review would be limited to the administrative record, and those cases holding that the plaintiff must prove that the decision actually was tainted by the conflict of interest.

In *Atwood v. Newmont Gold Co.,* 45 F.3d 1317 (9th Cir.1995), the Circuit attempted to clarify the standards, but ultimately confused matters further still. In *Atwood,* the plaintiff argued that the less deferential standard of review should be applied because Newmont was both the employer and the plan administrator. That contention was consistent with the Ninth Circuit's decisions in *Jung,* 755 F.2d 708, *Dytrt,* 921 F.2d 889, *Bogue,* 976 F.2d 1319, and *Watkins,* 12 F.3d 1517. However, it was contrary to either dictum or the holdings in *Dockray,* 801 F.2d 1149, *Oster,* 869 F.2d 1215, and *Taft,* 9 F.3d 1469. The issue that required clarification was whether the existence of an apparent

conflict was sufficient to trigger heightened scrutiny, or whether it was necessary to prove that the challenged decision actually was tainted by the conflict of interest.

Instead of addressing that issue, the *Atwood* court decided that the choice was between the "sliding scale" approach and the Eleventh Circuit's "presumptively void" approach. Although every Ninth Circuit decision during the past eight years seemingly had utilized the "sliding scale" approach, the *Atwood* court concluded that this circuit historically had followed the "presumptively void" approach. *Atwood,* 45 F.3d at 1322–23. The *Atwood* court therefore established the following methodology:

> First, we must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If not, we apply our traditional abuse of discretion review. On the other hand, if the beneficiary has made the required showing, the principles of trust law require us to act very skeptically in deferring to the discretion of an administrator who appears to have committed a breach of fiduciary duty. . . .
>
> Under the common law of trusts, any action taken by a trustee in violation of a fiduciary obligation is presumptively void. Where the affected beneficiary has come forward with material evidence of a violation of the administrator's fiduciary obligations, we should not defer to the administrator's presumptively void decision. In that circumstance, the plan bears the burden of producing evidence to show that the conflict of interest did not affect the decision to deny benefits. If the plan cannot carry that burden, we will review the decision de novo, without deference to the

4. The court offered two reasons why there was no conflict of interest: that Kaiser is a nonprofit corporation, and because the ultimate decision was made by an Advisory Board. However, it appears that the advisory board consisted of Kaiser employees, hence the nonprofit status of Kaiser would seem to have been determinative. Other courts have rejected the argument that a conflict of interest analysis is inapposite to a nominally "nonprofit" insurer such as Kaiser or Blue Cross. *Cf Lee v. Blue Cross/Blue Shield of Alabama,* 10 F.3d 1547, 1551–52 (11th Cir.1994).

administrator's tainted exercise of discretion.

*Id.* at 1323 (citations omitted.)

Two months after *Atwood,* a different Ninth Circuit panel issued its decision in *Winters v. Costco Wholesale Corp.,* 49 F.3d 550 (9th Cir.1995). The *Winters* court never mentioned *Atwood,* let alone *Atwood's* conclusion that the Ninth Circuit follows the "presumptively void" approach. On the contrary, the *Winters* court declared that "[b]ecause the employer is [also the Plan] administrator, a conflict of interest exists, and we therefore 'impose a more stringent version of the abuse of discretion standard' to Costco's decision." *Winters,* 49 F.3d at 552–53. That aspect of *Winters* followed the *Jung–Dytrt–Bogue–Watkins* line of cases. The *Winters* court then reviewed the administrator's decision and decided that it was "not unreasonable." *Winters,* 49 F.3d at 553–54. However, the *Winters* court complicated matters somewhat by observing that "there are no indications that the conflict [of interest] had an impact on the decision to deny benefits." *Id.* at 554. This may have been a "throwaway" observation, but it implies that the plaintiff had to prove that the decision actually was tainted by the conflict of interest.

Two weeks after *Winters,* a third Ninth Circuit panel issued its opinion in *Parker v. BankAmerica Corp.,* 50 F.3d 757 (9th Cir. 1995). The *Parker* court did not mention either *Atwood* or *Winters,* the two most recent Ninth Circuit ERISA cases. Instead, the *Parker* court followed the *Jung–Dytrt–Bogue–Watkins* line of cases. The court noted that BankAmerica "has a conflict of interest because of its dual position as the plan administrator and as the former employees' prior employer. Thus we must review the ... denial of benefits under a heightened level of scrutiny. We must weigh BankAmerica's conflict of interest as a factor in determining whether there was an abuse of discretion." *Parker,* 50 F.3d at 763. In other words, the *Parker* court assumed that certain relationships posed an inherent conflict of interest, and when such a relationship was present the court automatically would scrutinize the fiduciary's decision a bit more carefully. The plaintiff was not required to prove that the decision actually had been tainted by the apparent conflict of interest.

The most recent published Ninth Circuit opinion on this topic is *Snow v. Standard Ins. Co.,* 87 F.3d 327 (9th Cir.1996). In *Snow,* the court acknowledged that Standard had a clear conflict of interest because "Standard was both the insurance company and the Plan administrator." *Snow,* 87 F.3d 327. The *Snow* court then cited *Atwood* and *Winters* for the proposition that "scrutiny of Standard's decision would become more searching," but *only* if "that formal conflict led to a true conflict." *Id.* at 331 [5]. The *Snow* court then observed that there was no proof, apart from an unfavorable result for the plaintiff, "that the conflict actually impaired [Standard's] decision." *Id.* Consequently, "the district court should have applied the usual abuse of discretion test, rather than using the kind of sliding scale that we have since rejected in *Atwood* ...." *Id.*

The *Snow* court thus followed the line of cases holding that the existence of a conflict of interest was not enough; the plaintiff had to prove that the conflict actually tainted the challenged decision. The *Snow* court never mentioned, let alone distinguished, *Parker,* which was the most recent Ninth Circuit opinion on this topic and had reached the opposite result. The *Snow* court also followed *Atwood* in rejecting the "sliding scale" approach. Finally, the *Snow* court held that it was improper for the district court to remand the matter to the plan administrator for further consideration and development of the record; instead, the district court "should have decided the case one way or the other on the basis of the evidence in the record." *Id.* at 332–33.

### III

The preceding survey of Ninth Circuit ERISA case law raises more questions than it answers. Although this Circuit would appear to have traditionally followed the "sliding scale" approach, two recent Ninth Circuit

---

**5.** In my view this is a misuse of terminology which leads to more confusion. A formal conflict *is* a true conflict.

cases—*Snow* and *Atwood*—hold otherwise. Some Ninth Circuit panels have assumed that certain relationships pose an inherent conflict of interest, and therefore have scrutinized the fiduciary's decision more carefully. Other Ninth Circuit panels have insisted that a higher standard of review is not warranted unless the plaintiff first proves that the decision actually was tainted by the conflict of interest. The *Atwood* court required the plaintiff to offer evidence of actual taint, but also placed the burden upon the *fiduciary* to prove that the decision was *not* tainted by the conflict of interest. The *Atwood* court probably intended to create a burden shifting procedure, by which the plaintiff has the burden of establishing a prima facie case that the decision was tainted by the conflict of interest, after which the burden of proof shifts to the fiduciary to justify his or her decision. I also note an inherent tension between the requirement that the parties offer evidence proving that the decision was (or was not) tainted by the conflict of interest, and the rule that review of ERISA decisions is limited to the administrative record.

It is against this backdrop that I now consider plaintiff's motion to compel. To the extent Ninth Circuit case law requires the plaintiff to produce "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligation to the beneficiary," *Atwood*, 45 F.3d at 1323, an ERISA plaintiff seemingly would have a right to conduct far-reaching discovery aimed at uncovering such evidence. If the dispositive issue in the lawsuit is the motives of the decision maker, then an ERISA plaintiff presumably has the right to depose the claims reviewers, consulting physicians, other experts, and perhaps the corporate officers. An ERISA plaintiff would be entitled to inspect personnel files, internal reviews, and other documents that may show that employees of the insurance company were pressured to deny claims, or received less favorable

evaluations because the employee approved too many benefit claims. The plaintiff likewise would be entitled to review claims manuals and other documents detailing the claims review process and standards and the internal quality control and appellate procedures.[6]

Magistrate Judge Hillman recently considered this question in a separate case against defendant Standard, and concluded that the plaintiff in that action must be permitted broad discovery on the conflict of interest issue. *See Nicholson v. Standard Insurance Company*, CV 96–5082–KMW(SHx) (C.D. Calif. March 25, 1997).[7] Although Judge Hillman's decision in *Nicholson* is a reasonable interpretation of existing Ninth Circuit case law, I decline plaintiff's invitation to follow that path.

Permitting such extensive discovery would exponentially increase both the complexity and the cost of ERISA litigation. Moreover, there almost always would be a disputed issue of material fact to try, namely whether the fiduciary's decision was tainted by the conflict of interest. The parties could spend days or even weeks putting on witnesses to testify solely as to the motives of the decision maker. That inquiry would overshadow the principal issue in the litigation—whether the claimant was entitled to benefits. The sums expended on attorney fees to conduct extensive discovery, litigate discovery disputes, and try the action easily could exceed the amount in dispute. This vision of the future of ERISA litigation belies the Ninth Circuit's admonition that a "primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Taft*, 9 F.3d at 1472 (internal citation omitted).

In my view, it is a mistake to regard all ERISA cases as fungible. Rather, there are at least two general types of ERISA cases. In the classic "benefits determination" case, the issue is the right to benefits under the plan, *e.g.*, the plaintiff claims to be "disabled"

---

6. Defendants have represented that none of the requested documents contain evidence suggesting a conflict of interest. I do not question the sincerity of defendants' representation, but plaintiff would be entitled to review the documents and make her own assessment of their probative value.

7. The Magistrate Judge's order was affirmed on appeal to the Article III judge. *See* Order of May 5, 1997.

within the meaning of the disability insurance policy, or contends that certain medical expenses are covered under the plan. Resolution of the dispute is usually a matter of interpreting the plan and applying that language to the facts as developed in the administrative record.

There also is a subset of ERISA claims that do not involve individual benefit determinations but deal with "discretionary policy decisions," often affecting the plan as a whole or a large number of participants. In such cases, there is little, if any, language in the plan governing the matter in question. Since there is no objective standard against which to measure such decisions, there can be no "right" or "wrong" decision. Rather, the only standard is whether the decision maker acted "solely in the interest of the [plan] participants and beneficiaries." 29 USC § 1104(a)(1). There may also be cases that fall somewhere between these two poles, and partake of aspects of both types of decisions.

■ The significance of a conflict of interest, and the implications for the court's review of that decision, depend upon which type of ERISA decision is being reviewed. In the typical ERISA "benefits determination" case, the primary focus of judicial review should not be upon the motives of the decision maker but rather upon the merits of the underlying benefits decision, *i.e.*, whether the underlying decision to deny benefits was within the range allotted to a reasonable decision maker.[8]

■ Instead of forcing the plaintiff in a "benefits determination" case to prove that the underlying decision was tainted by a conflict of interest (or requiring the defendant to show the decision was not tainted), the courts should simply acknowledge that in certain situations there is an inherent conflict of interest, *e.g.*, when the decision maker is the insurance company that must pay any benefits awarded. If such a conflict of interest appears to be present,[9] the court still reviews the decision for abuse of discretion—assuming the Plan contains the requisite language conferring discretion upon the plan administrator—but the court's review is a little more searching (depending upon the severity of the conflict) and the court is not as quick to defer to the administrator's discretion.[10] Indeed, this appears to be the methodology contemplated by a number of Ninth Circuit cases, including *Jung, Dytrt, Bogue, Watkins, Taft,* and *Parker.*

The preceding methodology is appropriate for most ERISA claims, such as the instant case, where the plaintiff contends that she was entitled to benefits and the administrator disagrees. In such cases it is simply a matter of assessing whether the claimant satisfies the requirements for an award of benefits. However, the court may also be called upon to review ERISA claims that deal with discretionary policy decisions, often (though not always) affecting the plan as a whole or a large number of participants. In such cases, there is little, if any, language in the plan governing the matter in question. Since there is no objective standard against which to measure such decisions—and hence no "right" or "wrong" decision—it may be appropriate in those instances to consider whether the fiduciary's discretionary decision was in fact tainted by a conflict of interest that prevented the fiduciary from acting solely in the interests of the plan beneficiaries

8. This entire discussion obviously pertains only to actions that are reviewed for abuse of discretion, which in my experience is the majority of ERISA claims. I express no view on the proper methodology for conducting a *de novo* review in ERISA cases.

9. Ordinarily, the presence of a conflict of interest will be apparent on the face of the record or be stipulated by the parties, *e.g.*, the insurance company makes the benefits decisions and also pays out of its own assets any benefits that are awarded. There may be occasions, though, where the conflict or bias is not so obvious, at least on the face of the administrative record. *Cf Dockray,* 801 F.2d 1149 (company allegedly was retaliating against strikers by denying pension benefits).

In those circumstances it may be necessary to permit limited discovery and supplementation of the record to establish these facts. As a practical matter, the difference in the level of the court's scrutiny ordinarily will be so minimal that the defendant may choose to concede a conflict for purposes of that case and avoid the expense of litigating the issue.

10. Or, to put it another way, if the administrator is the pitcher and the district court is the umpire, there still is a range of permissible decisions but—when a conflict of interest is present—the strike zone gets a little narrower, and the administrator is less likely to get the benefit of the doubt on a questionable pitch.

and participants as required by 29 USC § 1104(a)(1). In that limited circumstance it might be appropriate to focus upon the administrator's motivations and to follow the "presumptively void" approach articulated in *Atwood* and *Snow*.

Once it becomes clear that there is more than one type of ERISA case—and that the court's approach to the conflict of interest issue may vary depending upon the nature of the case—it is easier to reconcile the (apparently) conflicting lines of Ninth Circuit authority. That helps to explain why in one case the Circuit will insist that review is limited to the administrative record, while in another case the Circuit will require the plaintiff to furnish evidence that the decision was tainted. The difference may be the type of decision that is being reviewed. Likewise, this distinction helps to explain why in some cases the Circuit has applied the "sliding scale" methodology, while in other cases it has used the "presumptively void" approach. It is possible for both approaches to be right if the nature of the decision being reviewed determines the scope of the court's review.

I am under no illusion that this attempt to harmonize the Ninth Circuit's ERISA case

law will solve all of the problems surrounding judicial review of ERISA decisions, but it is a step in the right direction. Of course, the resolution of one problem may create new disputes, *e.g.*, whether a particular case should be analyzed as a routine "benefits determination" claim or a "discretionary policy decision." For purposes of the present case, I need not decide precisely where to draw the line or how to treat a hybrid case. The instant claim clearly falls on the "benefits determination" side of the line.[11]

▮ Consequently, I will deny plaintiff's motion to compel and will not permit plaintiff to conduct additional discovery on the issue of whether the benefits decision was tainted by a conflict of interest. Indeed, I question whether there is any need for further discovery at all. Rather, in most ERISA cases, judicial review is limited to the administrative record.[12] At the same time, I will not require plaintiff to prove that the benefits decision was tainted by the alleged conflict of interest. Rather, the court will recognize that a conflict of interest exists here, since the insurance company that makes the benefits decisions would also be required to pay any such benefits from its own assets.[13] I

11. One issue that merits attention is the manner in which attorney fees are calculated. If review of most ERISA claims is to be limited to the administrative record, it often will be desirable—if not essential—for a party to retain counsel as early as possible to assist in developing that record. Under current Ninth Circuit law, however, the prevailing plaintiff in an ERISA action may not recover attorney fees incurred during administrative proceedings prior to suit. *Cann v. Carpenters' Pension Trust Fund*, 989 F.2d 313, 315–17 (9th Cir.1993). Yet it is in the administrative phase where the bulk of the attorney's time and efforts may be expended. Indeed, if the attorney does a superlative job and prevails during the administrative process, he will not be entitled to any fee award. Congress may wish to consider whether the fee statute should be amended in order to address this problem.

12. There may be limited exceptions to that rule, just as the courts have recognized limited instances where it is appropriate to supplement the administrative record when reviewing agency action. *Cf Inland Empire Public Lands v. United States Forest Service*, 88 F.3d 754, 765 n. 5 (9th Cir.1996) (additional evidence may be admissible in environmental cases to assist the court in understanding complex technical issues); *Love v. Thomas*, 858 F.2d 1347, 1356–57 (9th Cir.1988) (extra-record evidence may be admissible to de-

termine whether the agency considered all relevant factors); *Sierra Club v. United States Forest Service*, 843 F.2d 1190 (9th Cir.1988) (allowing some expert testimony to help the court understand the plaintiff's criticisms of the underlying decision); *Seattle Audubon Society v. Moseley*, 798 F.Supp. 1473, 1477 (W.D.Wash.1992) (denying defendant's motion to strike plaintiff's extra-record testimony and affidavits). *See also Taft*, 9 F.3d at 1472 (discussing scope of record in ERISA cases); *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1026–27 (4th Cir. 1993) (discussing when extra-record evidence might be permissible in an ERISA action, albeit the particular discussion was in the context of *de novo* review.) I need not decide this question today, since no specific request to supplement the record is presently before me.

13. Of course, even in the case of an insurance company, it is in the best interests of the majority of policy holders to deny bad claims. If an insurance company paid all claims without regard to their merits, the individual claimants might benefit but not the policy holders as a whole since their rates must be increased to pay for claims that are wrongly approved. Thus it is an oversimplification to assume that the interests of the insurance company in this case are automatically contrary to the interests of the plan

still will review the benefits decision for abuse of discretion—assuming, of course, that this Plan contains the requisite language conferring discretion upon the administrator—but the inquiry will be a little more searching.

### CONCLUSION

Plaintiff's letter-motion to compel discovery (# 53) is denied.

beneficiaries, or even to assume that the interests of plaintiff individually are synonymous with the interests of the beneficiaries as a whole. That underscores the difficulty of proving that a particular decision was "tainted" by a conflict of interest, when there actually may be many different forces at work. It is far easier to simply acknowledge the presence of a conflict but still focus the court's review upon the merits of the underlying benefits decision.