Jill M. BUTLER, Plaintiff,

v.

Marvin C. SHOEMAKE; State Farm Mutual Automobile Insurance Company, an Illinois corporation; and Standard Insurance Company, an Oregon corporation, Defendants.

No. 00CV561.

United States District Court,
D. Oregon.

June 12, 2001.

Daniel C. Dziuba, Tichenor & Dziuba LLP, Helen T. Dziuba, Law Office of Helen T. Dziuba, Portland, for Plaintiff.

Mark L. Zipse, Cavanagh & Zipse, Portland, for Defendant Marvin Shoemake.

James C. Edmonds, Clark Lindauer McClinton Krueger & Fetherston, Salem, for Defendant State Farm Mutual Automobile Insurance Company.

Lori R. Metz, Katherine S. Somervell, Bullivant Houser Bailey, Portland, for Defendant Standard Insurance Company.

## OPINION and ORDER

BROWN, District Judge.

This matter comes before the Court on Plaintiff's Motion for Summary Judgment as to Defendant Standard Insurance Company (Standard)(# 43) and Defendant Standard's Cross–Motion for Summary

Judgment (# 61). After a thorough review of the record and for the reasons set forth below, the Court **GRANTS** Standard's Cross–Motion and **DENIES** Plaintiff's Motion.

### FACTUAL BACKGROUND

Plaintiff was injured and alleges she became disabled as the result of a car accident that occurred on April 1, 1998, when she was 24 years old. At that time, Plaintiff was employed by Nike, Inc., as a customer service representative and was covered by a group long-term disability (LTD) insurance policy issued by Standard. After the car accident, Plaintiff suffered neck pain, back pain, and headaches and received a variety of treatments from several different physicians. She returned to work part-time in June, 1998, but stopped working in September, 1998, on the advice of one of her physicians, Eric Long, M.D. Standard paid short-term disability benefits to Plaintiff through September 27, 1998. By letter dated October 20, 1998, Standard informed Plaintiff it would review her claim to determine her eligibility for LTD disability benefits. On December 3, 1998, Plaintiff was examined by Lawrence Zivin, M.D., a neurologist, at Standard's request. Dr. Zivin concluded Plaintiff was able to work without restrictions.

On April 12, 1999, Standard awarded Plaintiff disability benefits for the period September 28, 1998, through December 3, 1998, but found Plaintiff was not disabled after that date. Plaintiff asked Standard to reconsider its claim denial for the period after December 3, 1998. After reconsideration, including review of additional medical records supplied by Plaintiff, Standard affirmed its decision on October 28, 1999. Standard then referred Plaintiff's claim for

an "independent review" by its Quality Assurance Unit. On January 11, 2000, Standard's Quality Assurance Unit affirmed Standard's decision to close Plaintiff's claim as of December 3, 1998.

Plaintiff brings her Third Claim [1] pursuant to 29 U.S.C. § 1132(g)(1) and alleges Standard violated the Employee Retirement Income Security Act (ERISA) by breaching its obligations under the LTD policy and by breaching its fiduciary duty to Plaintiff by refusing to pay long-term disability benefits.

### I. Standard of Review Under ERISA

When an ERISA plan provides the plan administrator with discretionary authority to determine benefit eligibility, the district court ordinarily reviews the plan administrator's decision to grant or to deny benefits for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When the plan does not confer such authority unambiguously, review is *de novo. Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1095 (9th Cir.), *cert. denied,* 528 U.S. 964, 120 S.Ct. 398 (1999). The Court's first inquiry, therefore, is whether Standard's LTD plan grants the requisite discretion to the plan administrator. The Standard policy provides:

> Except for those functions which the Group Policy specifically reserves to the Policy-owner, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.
>
> Our authority includes, but is not limited to:

---

**1.** The parties stipulated to dismissal of Plaintiff's First Claim against Defendant Marvin Shoemake. The Court previously dismissed Plaintiff's Fourth Claim on Standard's Motion. Plaintiff's Second Claim is for underinsured motorist benefits against Defendant State Farm Insurance and is not addressed in this Opinion.

1. The right to resolve all matters when a review has been requested;

2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;

3. The right to determine:

 a. Eligibility for insurance;

 b. Entitlement to benefits;

 c. Amount of benefits payable;

 d. Sufficiency and the amount of information we may reasonably require to determine a., b., or c. above.

Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

The Ninth Circuit has examined identical policy language and held it grants discretion unambiguously. *See Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 943 n. 1 (9th Cir.1999). Plaintiff concedes the policy language here is identical to that interpreted by the Ninth Circuit in *Bendixen,* but argues, nonetheless, the Court must review Standard's decision *de novo* because of Standard's alleged errors in its review of her claim. The standard of review, however, is not determined by the administrator's actions in processing a claim, but by the language of the policy. Based on *Bendixen,* Standard's policy unambiguously vests the plan administrator with discretion to determine whether Plaintiff is disabled and, therefore, this Court reviews Standard's decision for abuse of discretion.

 Even when the plan provides an unambiguous grant of discretion to the administrator, however, a heightened standard of review may be required by the presence of a conflict of interest. *Bendixen,* 185 F.3d at 943. The Supreme Court has held that a conflict of interest is "one

factor that must be weighed in determining whether there was an abuse of discretion." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. The Ninth Circuit has held that an apparent conflict is present whenever a plan administrator is responsible for both funding and paying claims. *See Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.,* 125 F.3d 794, 798 (9th Cir.1997). *See also Bendixen,* 185 F.3d at 943–44. Only a serious conflict, however, will require heightened scrutiny. *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1322–23 (9th Cir.1995). *Atwood* sets forth a two-tiered test:

> The 'less deferential' standard under which we review apparently conflicted fiduciaries has two steps. First, we must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If not, we apply our traditional abuse of discretion review.

*Atwood,* 45 F.3d at 1323.

 If the beneficiary comes forward with the required material evidence, the burden of proof shifts to the plan administrator to produce evidence that the apparent conflict of interest did not affect the decision to deny benefits. *McDaniel v. The Chevron Corporation,* 203 F.3d 1099, 1108 (9th Cir.2000). Because Standard is responsible for both funding the plan and administering claims, an apparent conflict of interest exists. *See Bendixen,* 185 F.3d at 943. *See also Lang,* 125 F.3d at 797.

Plaintiff does not offer any "material, probative evidence" to show Standard's denial of benefits was tainted by a serious conflict of interest. Plaintiff complains instead that she was denied discovery on this issue, which resulted in a Catch–22 situation. The Court, however, granted

Plaintiff's Motion to Compel discovery on this issue after Plaintiff narrowed her request at oral argument. The record does not support Plaintiff's assertion that she was denied discovery on the conflict of interest issue.

Plaintiff also argues she is not required to prove a serious conflict of interest and relies on *Palmer v. University Medical Group*, 973 F.Supp. 1179 (D.Or.1997). In *Palmer*, the district court relied on a then-existing split of authority in the Ninth Circuit, holding that a beneficiary need not produce evidence of a serious conflict for the court to apply a heightened scrutiny to the administrator's decision, and rejecting the two-tiered test set forth in *Atwood*. Subsequent Ninth Circuit decisions, however, cast doubt on the validity of the *Palmer* analysis, and this Court declines to follow it. *See generally Bendixen*, 185 F.3d at 943, and *McDaniel*, 203 F.3d at 1108.

Plaintiff also asserts Standard committed numerous errors that she contends warrant *de novo* review of Standard's decision or, in the alternative, ought to serve to shift the burden to Standard to rebut a presumption that it acted in self-interest. In the judgment of this Court, however, none of these alleged errors rises to the level of "material and probative" evidence required to heighten abuse of discretion scrutiny. The Ninth Circuit has issued few opinions in which it discussed the kind of showing necessary to satisfy the threshold requirement under *Atwood* and to shift the burden to the administrator. In both *Lang*, 125 F.3d at 799, and *Tremain v. Bell Industries*, 196 F.3d 970 (9th Cir.

1999), the court recognized inconsistencies in the reasons given for the administrator's decision were sufficient to establish a rebuttable presumption that the administrator's conflict of interest affected its decision to deny benefits. In *Friedrich v. Intel Corporation*, 181 F.3d 1105 (9th Cir. 1999), the court held procedural irregularities in the initial claims process and an unfair appeals process sufficiently demonstrated that Intel's conflict of interest affected its denial of benefits. Plaintiff's only assertion of inconsistency or procedural irregularity in Standard's denial of benefits is the allegation that Standard ignored its own policies.

Plaintiff maintains Standard ignored its internal policies when it evaluated her claim for LTD benefits. She points to two provisions in Standard's claims manual. The first provision, in a section of the manual titled "Denying or Terminating Benefits," provides the claims examiner "should expect that, in most cases, the claimant will be entitled to benefits." [2] Plaintiff interprets this provision as requiring Standard to assume Plaintiff was eligible for benefits. Plaintiff stretches the policy language too far. Such an interpretation would violate Standard's fiduciary duty under ERISA to all plan participants. Standard's policy does not obligate it to assume the existence of a disability.

Plaintiff also points to language in the claims manual that provides "An IME and/or specialist file review are not substitutes for the claimant supplying proof of loss, nor are they a replacement for information provided by the attending physician." [3] The claims manual also specifical-

**2.** Standard states its claim policies have been placed under seal. The portions of the claims manual submitted by Plaintiff in support of her Motion for Summary Judgment, however, were not filed under seal. The Court explained in a June 12, 2001, telephone conference with counsel for Plaintiff and Standard the procedure they must follow to place under seal the materials previously filed. The Court quotes herein from certain portions of Standard's claims manual with the consent of Standard's counsel.

**3.** See footnote 2.

ly provides that an appropriate reason for requesting an IME is to "resolve conflicts in medical information." Standard explained in its three different claim denial letters that it found conflicts in Plaintiff's medical records, and it asked Dr. Zivin to address these conflicts. Standard's reliance on Dr. Zivin does not violate Standard's internal policies and is not evidence of a serious conflict of interest.

In the absence of any material, probative evidence that Standard's decision to deny Plaintiff benefits was affected by a serious conflict of interest, the Court will review Standard's decision for abuse of discretion.

██ Although this matter is before the Court on cross-motions for summary judgment, the usual summary judgment standard under Rule 56 is not involved in this ERISA action. When an abuse of discretion standard is applied to a decision denying benefits, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen,* 185 F.3d at 942. This Court's review is limited to the record before the administrator at the time of the denial of benefits.[4] *Id.* at 944.

## II. Qualification for Disability Benefits Under Standard's Policy

██ To qualify for benefits under Standard's LTD policy, Plaintiff must become disabled while insured under the policy. Coverage under the policy ends when employment with the policyowner ends. Plaintiff's employment with Nike ended in December, 1998; therefore, she must es-

tablish that she became disabled before December, 1998.

Plaintiff is disabled under the Standard LTD policy if, "as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, [she] is unable to perform with reasonable continuity the Material Duties of [her] Own Occupation." The question for this Court to decide, therefore, is whether Standard abused its discretion in deciding Plaintiff was not disabled as of December, 1998.

██ Under the abuse of discretion standard of review, an administrator's decision must be upheld unless it is not grounded on any reasonable basis. *Horan v. Kaiser Steel Retirement Plan,* 947 F.2d 1412, 1417 (9th Cir.1991). A court may not substitute its own judgment for that of the administrator unless the administrator relied on clearly erroneous findings of fact, rendered its decision without any explanation, or construed provisions of the plan in a way that conflicts with the plain language of the plan. *Bendixen,* 185 F.3d at 944. When there is conflicting evidence before the administrator, decisions directly contrary to some evidence in the record do not necessarily amount to an abuse of discretion. *See Taft v. Equitable Life Assurance Society,* 9 F.3d 1469, 1472–73 (9th Cir.1993).

## III. Standard Did Not Abuse its Discretion When it Denied Plaintiff Benefits After December 3, 1998.

Standard's two five-page letters of April 12, 1999, and January 11, 2000, set forth its reasons for denying Plaintiff's LTD claim beyond December 3, 1998. Standard discusses the reports of numerous physicians from whom Plaintiff sought treatment, including William Brown, D.O., the

---

4. An exception to the general rule limiting review to the administrative record was recognized in *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan,* 46 F.3d 938 (9th Cir.1995). *Mongeluzo,* however, applies only in limited circumstances and only when the district court is reviewing a benefit decision under the *de novo* standard.

first physician to treat Plaintiff after the April 1, 1998, auto accident; Karen Wright, M.D., Plaintiff's family physician; Thomas Phipps, M.D., a neurologist; Eric Long, M.D., a physiatrist; Rodger Sleven, M.D., a gastroenterologist; F. Owen Black, M.D., an otologist; Roy Slack, M.D.; and Michael Karasek, M.D.

In particular, Standard noted Dr. Phipps, whom Plaintiff saw on three occasions on referral from Dr. Wright, concluded Plaintiff exhibited symptoms of "musculoskeletal pain without any evidence of major pathology."

Standard also reviewed a report from Joel Seres, M.D., who performed a medical-records review on behalf of State Farm Insurance, Plaintiff's auto insurer. Dr. Seres reported Plaintiff's medical record contained no objective findings relative to Plaintiff's cervical strain and concluded Plaintiff should have reached maximum medical improvement within a few weeks after the car accident.

Standard also relied on the medical examination performed at its request by Lawrence Zivin, M.D., a neurologist, on December 3, 1998. Dr. Zivin examined Plaintiff and reviewed her medical records. He concluded Plaintiff's reported symptoms exceeded his findings and were not supported by objective medical evidence. He opined Plaintiff's injuries did not warrant her being off work nor require "any major protective situation at work."

In December, 1998, Plaintiff was evaluated by F. Owen Black, M.D., due to her complaints of dizziness. Dr. Black diagnosed inner-ear concussion syndrome with perilymph fistula.[5] He advised Plaintiff could learn to "put up with" her symptoms, modify her lifestyle to avoid symptoms, or try modified bed rest. In a letter to Plaintiff's counsel dated July 16, 1999, Dr. Black opined Plaintiff was totally disabled from the time of his examination in December 1998 through the date of his letter. In its letter of October 29, 1999, Standard explained its reasons for rejecting Dr. Black's opinion.

Standard's denial recognizes the conflicting opinions of some of Plaintiff's treating physicians and Standard's retained physician, Dr. Zivin. Standard noted, "While your physicians continue to report that you are still unable to perform your occupation, it is our opinion that your physicians have not provided definitive findings that would support your ongoing subjective complaints."

In addition to the reports of Dr. Zivin, Dr. Seres, Dr. Phipps, and MRI and x-ray findings these physicians found essentially normal, Standard relied on its surveillance of Plaintiff, which confirmed Plaintiff was well enough to travel to Hawaii in February 1999. Standard found this trip to be inconsistent with Plaintiff's complaints and purported inability to work at a sedentary job.

Plaintiff maintains Standard abused its discretion by relying only on Dr. Zivin's examination and ignoring her treating doctors' opinions. The record reflects, however, Standard did consider all of the evidence in Plaintiff's medical record, including the reports from her many treating and examining physicians, and Standard explained its reasons for rejecting those opinions. Plaintiff does not identify any clearly erroneous factual findings relied upon by Standard and does not contend Standard construed provisions of the plan in a way that conflicts with the plain language of the plan.[6] *Bendixen,* 185

---

**5.** Because both Dr. Zivin and Dr. Seres found no evidence in the medical record that Plaintiff hit her head or lost consciousness in the accident, each physician concluded that Plaintiff had not suffered a concussion.

**6.** Plaintiff complains Standard did not ask Dr.

F.3d at 944. Essentially, Plaintiff takes issue with Standard's reliance on opinions that conflicted with her treating physicians' opinions. This, however, does not equate to an abuse of discretion. *See Taft,* 9 F.3d at 1473.

Plaintiff also urges this Court to follow the analysis required by regulation in Social Security disability claims. Specifically, Plaintiff asks the Court to adopt the "treating physician rule" applied in Social Security cases. Under this rule, an administrative law judge (ALJ) is required to give more weight to opinions from treating doctors. If the ALJ rejects the treating doctor's opinion, he or she must set forth specific, legitimate reasons for doing so supported by substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d). *See also Smolen v. Chater,* 80 F.3d 1273 (9th Cir.1996). The Ninth Circuit has recognized that requiring ERISA fiduciaries to follow Social Security Administration decisions regarding Social Security benefits would strip the fiduciaries of their administrative discretion. *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1286 (9th Cir.1990). Under ERISA, the administrator's duty is to determine eligibility for benefits under the terms of the plan. In Social Security cases, the duty of the ALJ is to apply the statutory and regulatory standards under Social Security law. For this reason, the Court declines to apply the Social Security "treating physician rule" in this ERISA case.

 The abuse of discretion standard "does not permit overturning a decision where there is substantial evidence to support the decision, that is, where there is relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Snow v. Standard Ins. Co.,* 87 F.3d 327, 332 (9th Cir.1996) (citations and internal quotations omitted).[7]

This Court cannot say reasonable minds could not accept Standard's reasoning as adequate to support the denial of Plaintiff's claim. As in *Snow,* it is clear Standard did not abuse its discretion by failing to explain its decision or by making a decision that conflicted with the Plan's language. Plaintiff has not pointed to any clearly erroneous factual findings relied on by Standard. Plaintiff's other complaints about Standard's decision do not indicate an abuse of discretion and do not merit further discussion.

### CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to Standard (# 43) and **GRANTS** Standard's Cross–Motion for Summary Judgment (# 61).

IT IS SO ORDERED.

Zivin to address the proper disability standard under the LTD policy. Plaintiff, however, makes no assertion that Standard, as opposed to Dr. Zivin, applied the wrong standard of disability. Since Dr. Zivin opined that Plaintiff was not disabled from any work, his opinion supports Standard's conclusion that Plaintiff is able to perform with reasonable continuity the material duties of her own sedentary occupation as a customer service representative.

7. The Ninth Circuit has overruled *Snow*'s holding that language requiring claimants to submit "satisfactory written proof" of their claims confers discretion on the plan administrator and triggers "abuse of discretion" review. *See Kearney,* 175 F.3d at 1089–90. The courts discussion in *Snow* of how the standards of review work, however, still is good law.