**Linda NEWMAN, Plaintiff,**

v.

**STANDARD INS. CO., et al., Defendants.**

**No. CV 97–4597 LGB (ANx).**

United States District Court,
C.D. California.

Feb. 23, 1998.

Mary T. Rahmes, Law Offices of Robert K. Scott, Newport Beach, CA, for Plaintiff.

Katherine Salo Ritchey, Shawn Hanson and Warren Nelson, Jr. of Pillsbury Madison & Sutro LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

BAIRD, District Judge.

### I. Introduction

Through this action, Plaintiff Linda Newman ("Plaintiff") seeks to recover long-term disability insurance benefits allegedly owed to her under a policy administered by Defendant Standard Insurance Company ("Standard," collectively with the Plan, "Defendants"). Defendants move for partial summary judgment on the issues of the standard of review, the scope of discovery, and the right to a jury trial. This Motion came on regularly for hearing on February 23, 1998. After considering all the pertinent papers on file and the oral argument of counsel, and for the reasons discussed below, this Court hereby GRANTS Defendants' Motion.

### II. Procedural and Factual Background

The following facts are undisputed unless otherwise noted.

Plaintiff was a participant in and a beneficiary of the Orange County Employees Association, Inc. Benefit Plan, an employee welfare benefit plan governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Part of the Plan included long-term disability coverage, which would provide Plaintiff $1,400 per month to age 65. However, benefits for disabilities caused or contributed to by a mental disorder are limited to 24 months. (Wheeler Decl.Ex. A. (the Plan) at 55.)

In February of 1992, Plaintiff became totally disabled. She alleges that her disability is a result of, among other things, Multiple Chemical Sensitivity Syndrome ("MCSS") resulting from environmental toxic exposure at work. Plaintiff filed a timely claim for benefits, which were paid until July of 1994. At that time, Standard ceased payments, alleging that Plaintiff's disability was a mental disorder, which limited her payments to 24 months.

After exhausting her administrative appeals with Standard, Plaintiff filed her complaint in this action on June 23, 1997. Her Complaint seeks a clarification of her rights to benefits, payment of her benefits, and attorney's fees and costs. Defendants filed the instant Motion for Partial Summary Judgment on December 17, 1997. Plaintiff filed an Opposition on January 5, 1998, and Defendants filed their Reply on January 12, 1998. A hearing was held on February 21, 1998.

### III. Analysis

### A. Standard for Summary Judgment Motions

Summary judgment must be entered against a party who, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish an element essential to that party's case, and on which that party would bear the burden of proof at trial. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party moving for summary judgment may carry its initial burden by pointing out to the district court that there is an absence of a genuine issue of material fact. *Id.* 477 U.S. at 323.

To avoid summary judgment, the non-movant must set forth specific facts showing that there remains a genuine issue of material fact for trial. *Id.* at 324. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party's evidence is merely colorable or is not significantly probative, then summary judgment may be granted. *Id.* 477 U.S. at 249–50.

### B. Discussion

### 1. Standard of Review

The first issue faced by the Court in this case is whether to apply an abuse of discretion or a de novo standard of review to Standard's determination denying further benefits to Newman under the Plan.

Although ERISA itself does not expressly specify the standard of review to be applied by district courts in reviewing challenged denials of benefits, the Supreme Court addressed this issue in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). There, the Court held that a denial of ERISA benefits in cases like the one at bar is "to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." *Id.* 489 U.S. at 115. Thus, the proper standard of review turns exclusively on whether or not Standard had discretionary authority under the terms of the Plans.

In this case, Plaintiff concedes that the Plan granted discretionary authority to Standard. (Pl.'s Resp. to Defs.' Stmt. Uncontroverted Facts ¶¶ 2–4.) This discretion includes the "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve[ ] all questions arising in the administration, interpretation, and application of the Group Policy." (*Id.* ¶ 3.) Therefore, under *Firestone,* the abuse of discretion standard would apply.

However, the fact that Standard is both the plan administrator and the funding source complicates matters considerably. As the Ninth Circuit recently stated:

The Plan in this case is actually an insurance policy issued and administered by Standard. Given Standard's dual role as both the funding source and the administrator of the Plan, we are faced with an inherent conflict of interest situation, and must take this factor into account. *Brown [v. Blue Cross & Blue Shield],* 898 F.2d [1556,] 1561 [ (11th Cir.1990) ] ("Because

an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business.")

*Lang v. Long–Term Disability Plan*, 125 F.3d 794, 797 (9th Cir.1997). Notwithstanding this, the mere presence of conflict does not necessarily remove the administrator's discretion. Rather, the Ninth Circuit has set up a burden-shifting framework for analyzing such cases.

■ Under this framework, the affected beneficiary must first come forward with "material, probative evidence beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Id.* at 798, quoting *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1322 (9th Cir.1995). If the beneficiary fails to meet this burden, then the administrator's decision is reviewed under the traditional abuse of discretion standard. *See id.* at 798; *Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 405 (9th Cir.1997); *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir.1996), quoting *Atwood*, 45 F.3d at 1323.

■ If the beneficiary does meet its initial burden of producing evidence from which it could be inferred that the plan's decision was tainted, then the burden shifts to the administrator to show that its decision was in fact in furtherance of its fiduciary responsibilities. *Lang*, 125 F.3d at 799. The *Lang* court held that if the administrator fails to meet its burden, then the challenged determination is reviewed *de novo* despite the grant of discretion in the plan.[1] *Id.* at 799. Only if the administrator does meet its burden is it enti-tled to the deferential abuse of discretion standard of review.

This Court must now apply this analysis to the case at bar. Accordingly, the first inquiry is whether Plaintiff has provided "material, probative evidence beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Lang*, 125 F.3d at 798. In *Lang*, the Ninth Circuit held that inconsistencies in the administrator's proffered reason for denying benefits met the claimants' initial burden. Plaintiff in the case at bar argues the same theory, asserting that Standard's reasons for applying the mental disability limitation have changed over time, suggesting that its self-interest has clouded its fiduciary duty. (Pl.'s Opp. at 5.)

In *Lang*, the administrator first denied the claimant's benefits because they had concluded that the claimant did not have fibromyalgia. Then, after being confronted with clear evidence that she did suffer from fibromyalgia, the administrator took the position that the claimant "would have to make a further showing that the fibromyalgia 'in and of itself' was disabling." *Id.* at 799.

■ In the instant case, Plaintiff argues that "the reasons given by Standard for imposition of the 'mental disorder' limitation and their refusal to lift the 'mental disorder' limitation in their denial letters dated 5/17/94 and July 29, 1994 are inconsistent." (Pl.'s Stmt. Genuine Issues ¶ 4.) Thus, an examination of these two letters is required.

The May 17, 1994 letter states in pertinent part that:

> The policy limits payment of benefits for a disability due to mental/nervous disorder to 24 months. Based on a complete review of the information available to us, we are applying this limitation to your claim.[2]

---

1. This pronouncement appears to be in considerable conflict with both *Firestone* and with the authority upon which *Lang* is based, which hold that an actual conflict is merely a factor to consider in abuse of discretion review. *See, e.g., Firestone*, 489 U.S. at 115; *Snow*, 87 F.3d at 331 ("If that formal conflict led to a true conflict, the standard of review would not exactly change, but scrutiny of Standard's decision would become more searching"). However, in light of this Court's ultimate conclusion in the case at bar, this conflict need not be resolved.

2. The letter also indicated that a copy of the applicable policy provisions was enclosed. This copy stated that "Payment of LTD Benefits is limited to 24 months for each period of disability caused or contributed to by a Mental Disorder.... Mental Disorder means a mental, emotional, behavioral, or stress-related disorder." (Wheeler Decl.Ex. C.)

(Wheeler Decl.Ex. C.) The July 29, 1994 letter states in pertinent part that:

> We have reviewed the additional medical information provided by Dr. Gunnar Heuser. After carefully considering this additional information, we find that Standard's previous decision to limit your claim under the mental disorder provision was appropriate and therefore must be upheld.... Although we recognize that you continue to experience a variety of ongoing symptoms, the information in your file documents that these symptoms are caused by an underlying psychiatric disorder, not by MCS[S].

(Wheeler Decl.Ex. D.) As can be readily seen, there simply is no conflict or inconsistency between these two letters. Both stated that the mental disability limitation was being applied because Plaintiff's disability was being caused by or contributed to by a mental disorder. Moreover, several other letters from Standard to Plaintiff have been submitted. The first is a letter dated November 5, 1993, about six months before the May 17, 1994 letter. It states in pertinent part:

> The policy limits payment of benefits for a disability due to mental/nervous disorder to 24 months. Based on a complete review of the information available to us, we are applying this limitation to your claim.... An independent medical examination was conducted by Seawright W. Anderson, M.D., Psychiatrist. He made the following diagnosis: Depressive Disorder, History of Major Depression and Somatoform Disorder. The doctor also identified obsessive compulsive traits as well as dependent personality disorder per Dr. Rowell (1990). Dr. Anderson also concluded that your psychiatric impairment is preventing you from performing your own occupation. The doctor feels that your mental disorder contributes and increases your physical symptoms.... Since your condition is primarily psychiatric in nature ... your claim will be limited to 24 months of payment.

(Wheeler Decl.Ex. A.) A letter dated March 24, 1994, found at Wheeler Decl.Ex. B, is similar. In short, all four letters consistently apply the mental disorder limitation due to Standard's belief that Plaintiff's disability was caused or contributed to by a mental disorder. Plaintiff points to no other material probative evidence. Consequently, Plaintiff has failed to meet her burden of providing "material, probative evidence beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Lang,* 125 F.3d at 798. Thus, Standard's decision to terminate Plaintiff's benefits will be reviewed under the abuse of discretion standard.[3]

### 2. What Evidence This Court May Consider and the Scope of Discovery

Having determined that the appropriate standard of review is abuse of discretion, the next issue is what evidence this Court may consider in making that review. In abuse of discretion cases, evidence outside the administrative record is completely inadmissible. *See Snow,* 87 F.3d at 332; *Taft,* 9 F.3d at 1471. Consequently, no evidence outside the administrative record will be admitted for deciding the merits of Plaintiff's claim.

However, although Plaintiff does not argue that she is entitled to discovery on the merits of her claim, she does argue that she is entitled to conduct discovery on the issue of whether Standard's decision was tainted by its apparent conflict as the administrator and funding source of the Plan. (Pl.'s Opp. at 5.) Plaintiff argues that this is the only way for her to obtain the "material, probative evidence beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Lang,* 125 F.3d at 798.

■ Although this makes a certain amount of logical sense, there are immense practical problems associated with this position. If this position were the law, then every ERISA case involving an administrator who is also the Plan funding source would involve far-reaching, open-ended, nearly limitless discovery. Plaintiffs would

---

**3.** Plaintiff argues that she is entitled to discovery in order to find such "material, probative" evidence. This argument will be addressed in the next section.

depose claims reviewers, consulting physicians, and corporate officers of plan administrators. They could inspect claims manuals and other documents describing the claims review process, and personnel files, employee evaluations, and other documents tending to show that employees of the administrator were pressured or rewarded for denying claims. Then, following this discovery, the issue of the decisionmaker's motivation would be extensively litigated, perhaps involving days or weeks of testimony. The expense of ERISA litigation could easily be more than the benefits at issue.

Such an outcome flies in the face of the purpose of ERISA. "A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472 (9th Cir.1993), quoting *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380 (10th Cir.1992); *See also Snow*, 87 F.3d at 332–333. Allowing the far-reaching discovery requested by Plaintiff would completely frustrate this purpose. Moreover, Plaintiff cites no authority supporting its asserted right to conduct this discovery. *Lang*, the case relied on the most by Plaintiff, does not support Plaintiff's request for discovery. Rather, the material probative evidence in *Lang*, namely the inconsistency in the administrator's explanations, came from the administrative record itself.

For these reasons, this Court holds that Plaintiff is not entitled to take discovery on the issue of whether Standard's determination was tainted by self-interest.

### 3. Jury Trial

Plaintiff concedes that "the Ninth Circuit does not authorize the right to trial by jury even though actions such as the present one involve actions for benefits due under the Plan." (Pl.'s Opp. at 7.) Consequently, Plaintiff's jury demand is ordered stricken; the instant case will be tried to the Court pursuant to Federal Rule of Civil Procedure 39(a)(2).

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Partial summary Judgment is hereby GRANTED. Because the Plan provides Standard with Discretion, and Plaintiff has failed to produce material, probative evidence that Standard's exercise of that discretion was tainted by self-interest, this Court's review of Standard's determination will be for abuse of discretion. No evidence outside the administrative record is admissible and no discovery is permitted. Additionally, Plaintiff's jury demand is stricken and the trial will be to the Court.

**IT IS SO ORDERED.**