Emily STILLS, Plaintiff,

v.

GBMC HEALTHCARE, INC., et al., Defendants.

No. Civ.A. JFM–98–1939.

United States District Court, D. Maryland.

March 30, 1999.

Barton J. Sidle, Towson, MD, for plaintiff.

G. Stewart Webb, Jr., Venable, Baetjer & Howard, Baltimore, MD, Larry R. Seegull, Piper & Marbury, Baltimore, MD, for defendants.

## MEMORANDUM

MOTZ, Chief Judge.

Plaintiff Emily Stills has brought this action against defendants GBMC Healthcare, Inc. and Standard Insurance Company pursuant to the Employee Retirement Income Security Act of 1974. Ms. Stills alleges that defendants improperly denied her claim for short-term disability benefits. Defendants have filed a motion for summary judgment. For the reasons stated below, the motion will be granted.

### I.

Plaintiff Emily Stills was employed by defendant GBMC Healthcare, Inc. as a clinical coordinator when she was diagnosed with cholecystitis. Dr. Alvaro Jerez removed Ms. Stills's gall bladder on June 4, 1997, and instructed her to remain out of work until June 27, 1997. Ms. Stills submitted a short-term disability claim to defendant Standard Insurance Company ("Standard"), which administered GBMC's short-term disability plan. Standard approved Ms. Stills's claim through June 26, 1997, but requested additional documentation to establish Ms. Stills's continuing qualification for benefits after that date.

Dr. Jerez determined that Ms. Stills's surgical wounds had healed during an office visit on June 26, 1997, and referred her back to her gastroenterologist, Dr. David Kafonek. Ms. Stills saw Dr. Kafonek on July 10, 1997, complaining of nausea and weakness, but Dr. Kafonek was unable to determine the cause of Ms. Stills's symptoms. On July 15, 1997, Ms.

Stills provided Standard a statement from an allergist, Dr. Richard Layton. Dr. Layton reported that Ms. Stills was suffering from a variety of symptoms, including nausea, fatigue and weight loss, but his objective findings were that the results of a physical examination were "normal."

On August 4, 1998, Dr. Layton submitted a second statement in which he repeated Ms. Stills's symptoms, but again provided no diagnosis of their cause. Standard followed up by requesting Ms. Stills's records from Dr. Layton. Dr. Layton's records were reviewed by Kim Skelton, a benefits examiner, and Shirley Smith, a nurse employed by Standard who reviews more than 1,200 claims per year. Standard's review revealed that Dr. Layton saw Ms. Stills twice between June 19 and August 20 and failed to identify any medical illness as a cause of Ms. Stills's symptoms. Standard informed Ms. Stills that the information she had provided to that point was insufficient to establish a disability under the plan beyond June 26, 1997, but invited her to submit additional information.

Standard asked Dr. Ronald Fraback, an independent physician consultant, to review Ms. Stills's file. Dr. Fraback is Board-certified in Rheumatology and Internal Medicine, and had been practicing medicine for more than twenty years. Dr. Fraback reviewed Ms. Stills's file with Ms. Smith on September 12, 1997, and determined that no objective information had been provided which would support Ms. Stills's disability claim. Standard thereafter denied Ms. Stills's claim.

On September 18, 1997, Ms. Stills requested a review of Standard's denial of her claim and provided additional statements from Drs. Kafonek and Jerez. Dr. Kafonek had not seen Ms. Stills since July 10, 1997, and Dr. Jerez had not seen Ms. Stills since her follow-up surgical visit on June 26, 1997. Neither of their statements shed any medical light on Ms. Stills's condition. Dr. Kafonek simply stated that Ms. Stills "first consulted me

regarding her gastrointestinal problems on April 22, 1997. Ms. Stills continued to experience symptoms through-out her entire treatment. She was referred to Dr. Latten [sic] for further testing." Dr. Jerez's statement was no more enlightening: "Mrs. Stills underwent a laparoscopic cholecystectomy on June 4, 1997 without complications. Unfortunately her symptoms have not subsided."

On September 22, 1997, Dr. Layton sent Standard additional medical records. Dr. Layton's cover letter stated that it was his "opinion that in June 1996 Mrs. Stills had an infectious disease that was not diagnosed. This may have been .a parasitic infection which is often difficult to document or an influenza-type illness." Dr. Layton did not identify the infectious disease, but he did recommend that Ms. Stills remain out of work "until her next office visit in three months." Despite his opinion that Ms. Stills should not work, Dr. Layton's notes indicated that he had advised Ms. Stills to begin exercising regularly to the point of breaking a sweat.

In light of the additional information, Standard asked Dr. Fraback to review Ms. Stills's file again. Dr. Fraback once again concluded that Ms. Stills had not provided objective evidence of a disability.

Standard's Quality Assurance Department, an independent review group that may reverse or affirm a claims examiner's decision after reviewing the entire claims file, reviewed Ms. Stills's claim. Linda Wheeler, who had worked in the department for six years and had previously worked as a benefits analyst for five years, was responsible for Ms. Stills's file. Ms. Wheeler asked for additional information from Drs. Moravec and Kafonek. Dr. Moravec, a specialist in Internal Medicine and Infectious Diseases and Ms. Stills's doctor since June 1991, provided additional records in November 1997. Dr. Moravec's records revealed that Ms. Stills experienced many of her symptoms as far back as 1991. Dr. Moravec, however, had ruled

out infectious diseases as a cause of Ms. Stills's symptoms. Ms. Wheeler also reviewed Dr. Layton's file on Ms. Stills and, like Dr. Fraback, found nothing to support her disability claim. On November 26, 1997, Ms. Wheeler notified Ms. Stills that she was affirming the decision to close Ms. Stills's claim.

## II.

■ Ms. Stills brings suit under 29 U.S.C. § 1132(a)(1)(B), which permits a participant in an employee benefit plan to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court defined the appropriate standard of review in such actions, holding that a "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If the administrator or fiduciary of an ERISA benefits plan is given discretionary authority to determine eligibility for benefits or to construe its terms, eligibility and term construction decisions are reviewed for an abuse of discretion. *See Doe v. Group Hospitalization & Med. Serv.,* 3 F.3d 80, 85 (4th Cir.1993).

■ Thus, the initial question presented is whether the benefit plan at issue gives Standard discretionary authority to determine eligibility for benefits. The applicable clause in the "Allocation of Authority" section of GBMC's short-term disability plan states that Standard has "full and exclusive authority ... to interpret the Group Policy and resolve all questions arising in its administration, interpretation, and application." Standard expressly identifies its authority as including "the right to determine ... entitlement to ben-

efits." Thus, the plain language of the plan confers discretionary authority on Standard to determine benefits eligibility. *See Snow v. Standard Ins. Co.,* 87 F.3d 327, 330 (9th Cir.1996) (plan granting authority to determine eligibility for benefits inherently confers discretion); *Newman v. Standard Ins. Co.,* 997 F.Supp. 1276, 1278 (C.D.Cal.1998) (interpreting identical language as providing Standard with discretionary authority). Accordingly, I will review Standard's decision to deny Ms. Stills's short-term disability claim under an abuse of discretion standard.

■ Under the abuse of discretion standard, the challenged denial of benefits will not be disturbed if reasonable, and "the plan administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 788 (4th Cir. 1995) (quoting *Baker v. United Mine Workers of Am. Health & Retirement Funds,* 929 F.2d 1140, 1144 (6th Cir.1991)).

Standard's review of Ms. Stills's claim constituted a deliberate, principled reasoning process. Ms. Stills's claim was initially reviewed by Mr. Skelton, a benefits analyst, and Ms. Smith, a nurse, both of whom had several years of experience reviewing disability claims. Ms. Stills's claim was also independently reviewed by Ms. Wheeler of Standard's Quality Assurance Department. Ms. Wheeler had six years experience in that position as well as five years as a benefits analyst and had reviewed thousands of claims in her career. Finally, Ms. Stills's claim was twice reviewed by Dr. Fraback, an independent physician with twenty-one years of experience.

■ Standard collected medical records and solicited medical reports from Ms. Stills's health care providers. After reviewing initial submissions and preliminarily denying benefits, Standard requested more information to substantiate the claim and reviewed additional records submitted by Drs. Kafonek, Jerez, and Layton.

Even after all of those records were reviewed, Standard solicited additional information from Drs. Moravec and Kafonek before finally denying the claim. Because Standard conducted a thorough investigation and review of Ms. Stills's claim, used experienced employees and healthcare professionals, and conducted two levels of independent analysis, I have no problem concluding that Ms. Stills's claim was reviewed by a deliberate, principled reasoning process.

■ Standard's decision is also supported by substantial evidence. Of Ms. Stills's physicians, only Dr. Layton opined that Ms. Stills was unable to return to work after June 27, 1997. Dr. Layton, however, never diagnosed Ms. Stills with a causal medical condition.[1] In addition, Dr. Layton's notes from his September 15, 1997 examination of Ms. Stills show that he recommended regular exercise to the point of breaking a sweat. Such a recommendation is at odds with his opinion that Ms. Stills was unable to return to the relatively sedentary duties of her job.

Dr. Layton's inconsistencies and failure to diagnose beyond vague speculation [2] are contrasted by Dr. Fraback's conclusion that no objective medical evidence of Ms. Stills's disability was presented. Thus, substantial evidence supports Standard's conclusion that Ms. Stills did not provide sufficient evidence of a disability under the plan.

---

**1.** Ms. Stills attached an affidavit by Dr. Layton to her opposition in which he diagnoses Ms. Stills with "Candidiasis." Subsequent to filing her opposition, Ms. Stills submitted a "corrected affidavit" in which Dr. Layton's diagnosis changes from Candidiasis to "Multiple Chemical Sensitivity." Dr. Layton's diagnosis, be it Candidiasis or Multiple Chemical Sensitivity, was never presented to Standard during its review of Ms. Stills's claim. Because I have found the abuse of discretion standard applicable, I must limit my assessment of the reasonableness of Standard's denial of benefits to a review of the facts known to Standard at the time it made the challenged decision. *See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 125 (4th Cir.1994). Accordingly, I will not consider Dr. Layton's affidavits.

**2.** Dr. Layton's conclusion that Ms. Stills had an unidentified infectious disease is contradicted by one of Ms. Stills's other physicians. Dr. Moravec, a specialist in Internal Medicine and Infectious Diseases, ruled out infectious disease as a cause of Ms. Stills's symptoms.