Jane FITTS, Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION., et al.,
Defendants.

No. 98–617(HHK/JMF).

United States District Court,
District of Columbia.

Nov. 27, 2001.

David Elliot Schreiber, Bethesda, MD, John Michael Fedders, Washington, DC, John J. Witmeyer, Richard B. Marrin, Thomas R. Esposito, Ford, Marrin, Esposito, Witmeyer & Gleser, LLP, New York City, for plaintiff.

Mary Carolyn Cox, Wilmer, Cutler & Pickering, Washington, DC, John J. Witmeyer, Richard B. Marrin, New York City, Frank Charles Morris, Jr., Teresa L. Jakubowski, Epstein, Becker & Green, P.C., Washington, DC, for defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

Before me for resolution is *Plaintiff's Motion to Compel* Discovery.

### Facts

The pertinent facts of this case are set forth in the following paragraph from the Court of Appeals' decision in *Fitts v. Federal*

*National Mortgage Association,* 236 F.3d 1, 2 (D.C.Cir.2001):

> Jane Fitts, an attorney, was employed by Fannie Mae from 1982 to 1995 and paid the required premiums for the long-term disability policy. In 1995, Fitts became disabled by bipolar disorder, an illness characterized by cycles of depressive and manic episodes. See AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 395 (4th ed. text rev.2000)[1]. Fitts applied to Unum [Life Insurance Company of America] for benefits under the policy, which Unum granted. Because Unum classified her disorder as a mental illness, however, it limited her benefits to 24 months. Fitts unsuccessfully protested Unum's decision, arguing that bipolar disorder is associated with changes in the physical structure of the brain and often runs in families, suggesting genetic causation. Unum asserts that it invited Fitts to submit additional medical information supporting her claims, but that she responded only with "conclusory" letters from her treating psychiatrist and two other psychiatrists. Fitts asserts that she signed a release permitting Unum to view her entire medical file, which contained data supporting her claim. Unum refused to alter its classification of bipolar disorder as a mental illness and ceased paying Fitts benefits after 24 months.

In that decision, the Court of Appeals reversed Judge Urbina's determination that review of Unum's decision would be under a deferential arbitrary and capricious standard. Finding instead that review must be de novo, the Court of Appeals left that review to Judge Urbina because "numerous factual disagreements persist." *Id.* at 5. For example, Unum contends, that there is no present medical consensus that bipolar disorder is a physical, as opposed to a mental illness. Fitts insists that current medical research supports her claim that "bipolar disorder is associated with changes in the physical structure of the brain and often runs in families, suggesting genetic causation." *Id.* at 2.

1. Hereafter: "DSM–IV."

## Plaintiff's Demands

Seizing upon the nature of the review, Fitts insists that she is entitled to the broad discovery permitted by Fed.R.Civ.P. 26(c). She wants information which she says falls into three categories: (1) documents explaining how defendants derived the physical/non physical dichotomy on which they relied in denying Fitts coverage; (2) documents explaining how defendants have actually applied the physical/non-physical distinction in handling claims for long term disability benefits, and (3) documents from legal proceedings involving the first two categories. *Plaintiff's Reply Memorandum of Law in Further Support of Motion to Compel Discovery* at 2.

More specifically, Fitts wants defendants to search their files for documents which pertain to how they have treated other benefit claims under any policy which excluded a mental illness or disorder from coverage. She also wants the litigation files in any legal proceeding in which the claimant received coverage greater than the 24 months but had a disorder of the brain or other condition listed in DSM–IV, including bi-polar disorder. Finally, she wants defendants to give her the reports, depositions, or trial testimony of any expert retained by either side, or of any medical professional, in any legal proceedings in which defendants were involved in which there arose the issue of whether any disorder of the brain or condition listed in DSM–IV should be considered a mental, nervous, or emotional disease or disorder.

## Federal National Mortgage Association's Objections

Federal National Mortgage Association ("Fannie Mae") protests that it has already produced all the documents it has that fall within these categories except as to information pertaining to how the physical/non-physical distinction has been applied to other claims. As to this information, Fannie Mae refuses to produce such documents on the grounds that it did not make a determination as to this particular provision in Fitts's policy; Unum did. Hence, the limited informa-

tion it has as to other claims (which is highly confidential) is not relevant to Fitts's claim.

## Unum's Objections

Unum's objects on the ground of burdensomeness and irrelevance. In support, it tenders the declaration of John Gale, a Senior Support Specialist, in the Quality Performance Support Department. Gale explains that interrogatory number 5 demands all claim files pertaining to a claim for LTD benefits which Unum has paid to any person under an insurance policy which excluded mental, nervous, or emotional diseases or disorders and who has a diagnosis or condition listed in DSM–IV, which, Gales notes, is 900 pages long.

Gale then explains that not all Unum policies contain an exclusion for mental illness and some one would have to hand check each of the 59, 566 active long term disability policies, as well as those that are longer in force, to ascertain which contain the same exclusion as the one in issue here.

According to Gale, Unum does not categorize its claim files by the nature of the claimant's medical condition and an electronic search of the computer system it uses for tracking claims would not identify all (or even most) claimants with a diagnosis listed in the DSM–IV. Once again, Unum would therefore have to hand check approximately 86, 000 open long term disability claim files. Unum does not have any information regarding the number of closed claim files.

Finally, Gale explains that 2,400 lawsuits have been filed against Unum in the last five years but the lawsuits are not categorized according to either the type of policy at issue (e.g., long term disability, life, accidental death) or the nature of the disability asserted. Once again, a paralegal would have to review Unum's file on each lawsuit. In fact, according to Gale, Unum's file might not contain the depositions, expert reports and transcripts plaintiffs seeks unless those documents were transmitted by Unum's outside counsel since counsel would have had the primary responsibility to maintain the litigation file and might not have sent the documents plaintiff seeks to Unum, its client.

## The Standard of Review and the Scope of Discovery

Courts differ as to whether review in an ERISA case is limited to the record which was created by the insurance carrier when it considered and rejected the claim.[2] This Circuit has not yet spoken to this issue. The scope of discovery is understandably a function of the whether or not review is limited to the review of that record. If it is, discovery seems utterly unjustified. *Caldwell v. Life Insurance Co.*, 165 F.R.D. 633, 637 (D.Kan. 1996). On the other hand, if a court is not limited to that record, discovery may be permitted. But, and it is a big but, courts have not permitted the same kind of discovery in ERISA cases as they have in non-ERISA cases. While generalizations are impossible (and dangerous), it can be said that the courts have searched for a close connection between the information sought and the issues presented. *E.g., Buchanan v. Reliance Standard Life Ins. Co.*, 5 F.Supp.2d 1172 (D.Kan.1998)(discovery limited to narrow question of the manner in which insurance company made the decision); *Newman v.*

---

**2.** The ancillary question of the scope of review under a *de novo* standard has also produced a circuit split. In *Luby* [*v. Teamsters Health, Welfare and Pension Funds*, 944 F.2d 1176, 1183 (3d Cir.1991)] the court held that district courts were free to limit their de novo review to the record before the plan administrator or they could permit further information or evidence to be submitted to enable a full exercise of informed and independent judgment. *Luby*, 944 F.2d at 1184–85. Proceeding to the opposite conclusion, the Sixth Circuit in *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979 (6th Cir.1991), has held that a *de novo* standard does not permit consideration of evidence not presented to the plan administrator. In a somewhat more middle ground posi-

tion, the Eighth Circuit in *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir.1993), has held that upon good cause shown the *de novo* standard of review allows the introduction of evidence not presented to the administrator. Similarly, the Fourth Circuit in *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir.1993), has indicated that a de novo standard allows examination of evidence not before the administrator where necessary for adequate review by the district court.

*Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1097 (7th Cir.1994). *See Robert Mason Hogg,* The *Evidentiary Scope of De Novo Review in ERISA Benefits Litigation after Firestone Tire & Rubber Co.*, 78 Minn. L.Rev. 1575, 1585 (1994).

*Standard Ins. Co.*, 997 F.Supp. 1276 (C.D.Cal.1998)(disallowing discovery as to possible conflict of interest); *Palmer v. University Medical Group*, 973 F.Supp. 1179 (D.Or.1997)(same). The scope of discovery in ERISA cases permitted is simply not the same as the discovery permitted by Fed. R.Civ.P. 26(c). In so ruling, the courts seem to be sensitive to the concerns which have animated the nature of the review they give to ERISA administrator decisions-that courts not become ERISA administrators of last resort and that the review process should be as inexpensive and expeditious as possible. *See generally Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990).

### Plaintiff's Demands Are Excessive

■ This narrowing of the scope of discovery in an ERISA case is not even necessary in this case because most of the discovery plaintiff seeks is beyond even the Fed. R. Civ. P. 26(c) standard of relevance to a claim or defense. The DSM–IV is a scientific compendium of every aberration, disorder, and disease of the human mind. That, five years ago, Unum allowed a claim of someone with a diseases or disorder listed in DSM–IV casts no light whatsoever on the scientific validity of Unum's conclusion that plaintiff's bipolar disorder fits within the exclusion of the Fannie Mae policy.

■ Plaintiff's hunt for documents produced by or in lawsuits against Unum goes further afield. That someone suing Unum retained an expert who testified that a disorder listed in DSM–IV should not invoke an exclusion for mental illness in a particular instance has absolutely nothing to do with the scientific validity of the specific conclusion reached by Unum's physicians in this case that bipolar disorder is not a mental illness.

The only possible relevant information would be that detailing an instance where Unum or someone who could be deemed its agent under Fed.R.Evid. 801(d)(2) stated that an insured's bipolar disorder did not fall within the exclusion that Unum applied to

disqualify plaintiff. That admission by a party opponent would not be hearsay and would be admissible, provided its probative force was not substantially outweighed by "considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed.R.Evid. 403.

I question whether such an admission, if it existed, would meet the 403 standard. Unum made the decision in plaintiff's case based on the determinations of three physicians, Doctors Mirkin, Hogan and Haines. Their declarations are attached to *Defendant Unum Life Insurance Company of America's Opposition to Plaintiff's Motion to Compel Discovery*. Collectively, they explain why they believe that plaintiff's bipolar disorder is a psychiatric illness and therefore falls with the policy exclusion for mental illness, defined as "mental, emotional or nervous diseases or disorders of any type." *Fitts*, 236 F.3d at 1. The doctors insist that there is no consensus, for example, that any physiological abnormalities in the brain "cause bipolar disorder or whether such abnormalities merely correlate to the presence of this disorder." Declaration of Dr. Hogan at 3. Hence:

> In summary, while there may be certain physiological markers which correlate to bipolar disorder, this does not alter the conclusion that bipolar disorder is a psychiatric illness. Psychiatric illnesses are distinguished from other medical conditions by the fact that they are all characterized predominantly by a cognitive, emotional or behavioral abnormality.

Declaration of Doctor Robert A. Haines.

Plaintiff will prevail in this case only insofar as she convinces Judge Urbina that the current scientific literature and learning render these conclusion incorrect and that it is the present consensus of the medical community that bipolar disorder is not a "mental, emotional or nervous disease[ ] or disorder[ ]." Judge Urbina will shape that inquiry in terms of the present scientific learning. While it may be of some interest to him that in another case Unum took a different posi-

tion, it does not necessarily follow that Unum's doing so weakens the validity of the conclusions of the doctors in this case. If Unum's position in the other case was based on a physician's determination, the doctors in this case may simply disagree with the other physician's conclusion and may have an adequate reason for doing so. Under that scenario, the position Unum took in the other case would have little probative value indeed. On the other hand, courts dismiss as "collateral" evidence from other sources when the probative value requires a detailed examination of the source from which the evidence comes. Here, Judge Urbina would have to know as much as he could about the other case in which a doctor paid by Unum took a position said to contradict Unum's position here. I believe that Judge Urbina would be loath to engage in such an inquiry.

Of course, if the doctors in this case could not justify the differences in their conclusions with those of the physicians in the earlier case, Unum would have to live with a probative and damaging admission and contradiction of its present position. Yet, the theoretical possibility that this type of evidence may exist hardly justifies the cost of finding it. While plaintiff dismisses it, Gale's declaration is a particularly well-detailed showing of the most significant burden that will be imposed on Unum even if the search was to be limited to cases in which Unum conceded that the mental illness exclusion did not apply to bipolar disorder. Unum would have to hand search thousands of claims and litigation files to find the words "bipolar disorder" and then ascertain from the file how the claim was handled. Given the nature of the search and the way in which Unum keeps its records, Gale's projections of the cost and time involved are reasonable and surely make a strong case for the overly burdensome nature of plaintiff's request.

Thus, the theoretical possibility that the search for another instance where Unum did not apply the mental health exclusion to a claimant who suffered from bipolar disorder cannot justify the expense and time it would take to find it. That there is a needle in a haystack does not make searching the haystack worthwhile. I must weigh the possibility that a damaging admission by Unum is contained in their files is only theoretical and that it may have precious little probative force, even if found, against the cost and expense involved in searching for it. Ultimately, I must also allow for the emerging consensus among the courts that discovery in ERISA cases should be less than what is ordinarily required. I have therefore determined that I will not permit the discovery plaintiff seeks, even if it were to be limited, as I think it should be, to instances where Unum took the position that a bipolar disorder did not fall within the mental illness exclusion. In my view, that would require Unum to conduct too costly and expensive a search to be justified by the potential probative force of the evidence it might turn up.

The case for discovery against Fannie Mae is even weaker. The court of appeals has stated of Fannie Mae's role in the determination made in this case:

> Nor is there any other indication that Fannie Mae (or, more precisely, the Committee) has delegated any discretionary authority to Unum to determine eligibility. Finally, there is no "decision[ ], interpretation[ ] [or] determination[ ]" by Fannie Mae itself at issue here. Fannie Mae has renounced its own discretionary authority with respect to disability benefits determinations. See Fannie Mae Br. at 11. At oral argument, the parties agreed that Fannie Mae exercised no discretion with respect to the eligibility determination in this case, and further agreed that there is no appeal to Fannie Mae from Unum's disability benefit determinations.

*Fitts*, 236 F.3d at 5.

Fannie Mae has also made a detailed showing of the possible contents of the limited files it maintains when its employees make an LTD claim of Unum, which are: (1) copies of the employer's portion of the Unum application for LTD benefits by an employee or former employee: (2) copies of letters from Unum to employees approving or disap-

proving applications for LTD benefits; (3) copies of payment statements indicating the amount of monthly benefits Unum has paid to Fannie Mae employees and (4) miscellaneous documents in an employee's file which may refer to an employee's application for LTD benefits. *Defendant Federal National Mortgage Association's Opposition to Plaintiff's Motion to Compel Discovery* at 7–8.

Given the limited role Fannie Mae plays this or any other case where Unum declines to pay LTD benefits and the equally limited nature of the files it keeps, I find it inconceivable that there would be any thing in the Fannie Mae's files which could be used to impeach or contradict Unum's doctors' determinations in this case.

An order accompanies this Memorandum Opinion.

## ORDER

It appearing that Judge Kennedy issued a Scheduling Order on May 30, 2001, and

It further appearing that specific discovery deadlines have been set including an overall discovery of December 15, 2001, and

**ORDERED** that *Defendant Unum Life Insurance Company of America's Request for Scheduling Conference and Entry of Scheduling Order* [# 72] is **DENIED AS MOOT**. It is further, hereby,

**ORDERED** that *Plaintiff's Motion to Compel Discovery* [# 73] is denied.

**SO ORDERED.**