**Diane DAMES, Plaintiff,**

v.

**THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation, Defendant.**

**No. CV–98–1397–ST.**

United States District Court, D. Oregon.

June 15, 1999.

Thomas J Flaherty, Hillsboro, OR, for Diane Dames.

Robert B Miller, Bullivant Houser Bailey Pendergrass & Hoffman, Portland, OR, for Paul Revere Life Ins. Co.

OPINION

STEWART, United States Magistrate Judge:

## INTRODUCTION

Plaintiff, Diane Dames ("Dames"), brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §§ 1001–1461, to recover long-term disability benefits under a group disability plan sponsored by Dames' former employer, Imagebuilder Software, Inc. ("Imagebuilder"). Defendant, The Paul Revere Life Insurance Company ("Paul Revere"), is the claims administrator of the policy. Paul Revere stopped paying disability benefits to Dames because of a 24–month limitation on benefits for psychiatric disorders. Dames contends that she does not have a psychiatric disorder but instead has a physical illness, fibromyalgia, entitling her to continued benefits.

This court has federal question jurisdiction over the ERISA claims under 28 USC § 1331. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). Now before the court is Paul Revere's partial motion for summary judgment (docket # 19) on the issue of the proper standard of review. For the reasons set forth below, the court will review Paul Revere's claim decision under the arbitrary and capricious standard.

## UNDISPUTED FACTS

### I. Dames' Claim

Dames worked as an office manager at Imagebuilder from November 11, 1993 until November 16, 1995. In August 1995, Dames claimed that she was totally disabled due to depression. In October 1995, Paul Revere began paying Dames long-term disability benefits under "Other Limitations" provision of the group disability policy between Paul Revere and Imagebuilder effective January 1, 1992 ("1992 policy"). This provision states: "[f]or any disability which is caused or contributed to by a psychiatric disorder ... , benefits are payable for up to twenty-four months whether or not [the participant is] hospital confined." Plaintiff's Exhibit ("Ex") A, p. 17.

On October 13, 1997, Dr. Gary L. Sultany, M.D., examined Dames and diagnosed her as having fibromyalgia, commenting that: "She does qualify for the usual criteria." Plaintiff's Ex B, p. 2.

On October 30, 1997, Dames saw Dr. Andre Barkhuizen, M.D. "searching for information regarding fibromyalgia and treatment of this condition." Plaintiff's Ex C, p. 1. After an examination, Dr. Barkhuizen "educated the patient regarding the pathogenesis of fibromyalgia." *Id* at 3.

The 24–month benefit period expired on October 31, 1997, and Paul Revere terminated Dames' benefits effective that day. In a letter dated January 21, 1998, the claims examiner stated:

We have reviewed the information submitted by you for review from Dr. Paltrow, Dr. Reynolds, Dr. Sultany, and Dr. Barkhuizen, as well as reviewing your file in its entirety. Although Dr. Sultany and Dr. Barkhuizen's notes from October 13, 1997 and October 30, 1997, respectively, would suggest fibromyalgia as the current diagnosed impairment, this diagnosis was not described during your 24 month benefit period. Dr. Graham's notes for the period of 1995 to 1997 do not describe a diagnosis of Fi-

bromyalgia, but rather Depressive Disorder, as does Dr. Eaton's February 12, 1996 Psychiatric Assessment. In addition, Dr. Henderson's April 15, 1996 letter notes, "the patient has presented with complaints of severe anxiety, episodic depression, and a variety of physical symptoms, which from my analysis so far, certainly appear to be related to her severe anxiety". Neither Dr. Paltrow's April 8, 1996 consultation report nor his November 7, 1996 Psychiatric Assessment refer to a diagnosis of Fibromyalgia, but rather a diagnosis of depression. Dr. Paltrow's letter of July 7, 1997 as well as October 24, 1997, which are in reference to your physical symptoms, do not define any diagnosis. Based on the information received, it is our opinion that although a physical diagnosis of fibromyalgia may be present at this time, the evidence in the file supports a disability during the time of your claim which was caused or contributed to by a psychiatric condition.

Plaintiff's Ex E, p. 1.

## II. *Policy language*

The 1992 policy states:

We may change the Group Policy if we receive a written request from the policyholder. All changes that are made are stated in riders or amendments to the Group Policy. These documents must be signed by both our President or Secretary and the policyholder. Your consent is not needed to make a policy change.

Affidavit of Lori R. Metz ("Metz Aff"), Ex A, p. 44.

In December 1995, Imagebuilder's Vice President of Finance signed a request for an amendment to reduce the maximum long-term disability benefits. Paul Revere's President signed the amended policy. The amended policy, effective February 1, 1996 ("1996 policy"), includes an "ERISA Attachment" which states that Paul Revere

will make all decisions regarding your eligibility for benefits and benefit determinations and will do so in accordance with the terms and conditions of the Group Policy. [Paul Revere] has full, final, complete, conclusive and exclusive discretion to determine eligibility for coverage and benefits under the Group Policy, to determine the amount of any benefits payable under the Group Policy and to construe and interpret the terms and conditions of the Group Policy and all related documents.

Affidavit of Vicki J. Miller, p. 39.

Dames did not receive a copy of the 1996 policy.

## DISCUSSION

Paul Revere argues that the 1996 policy between Paul Revere and Imagebuilder confers discretion on Paul Revere to make benefits determinations. Thus, according to Paul Revere, this court should deny Dames' request for discovery outside the administrative record and review the decision to terminate Dames' benefits for an abuse of discretion. Dames responds that: (1) because the ERISA Attachment was not part of the 1992 policy Dames received, its grant of discretion to Paul Revere is inapplicable in this case; and (2) even if the ERISA Attachment applies to Dames' claim, this court should apply a *de novo* standard of review because the administrative record reveals that Paul Revere's inherent financial conflict influenced its benefits determination. Thus, according to Dames, she is entitled to further discovery.

## I. *Legal Standards*

### A. *Standards of Review*

■ In actions to recover benefits due under an ERISA plan administrator denying benefits, the court employs a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan

vests the administrator with such discretionary authority, a district court may review the administrator's decision only for an abuse of discretion. *Id.* The term "arbitrary and capricious" also describes this deferential standard of review. *See Dytrt v. Mountain State Tel. & Tel. Co.,* 921 F.2d 889, 894 (9th Cir.1990). However, even if a plan gives discretion to an administrator, the court must weigh any conflict of interest that may have influenced the administrator's decision as a "factor in determining whether there is an abuse of discretion." *Firestone Tire & Rubber,* 489 U.S. at 115, 109 S.Ct. 948.

 No deference to the plan administrator is given under *de novo* review. In contrast, under the arbitrary and capricious standard of review, an administrator's decision "is not arbitrary unless it is 'not grounded on *any* reasonable basis.'" *Horan v. Kaiser Steel Retirement Plan,* 947 F.2d 1412, 1417 (9th Cir.1991) (emphasis in original), quoting *Oster v. Barco of Cal. Employees' Retirement Plan,* 869 F.2d 1215, 1219 (9th Cir.1988). Also, an arbitrary and capricious standard of review limits the court to consider only the evidence reviewed by the administrator at the time the eligibility decision was made. *McKenzie v. General Tel. Co. of Cal.,* 41 F.3d 1310, 1316 (9th Cir.1994), *cert denied,* 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995); *Taft v. Equitable Life Assur. Soc.,* 9 F.3d 1469, 1471 (9th Cir.1993).

### B. *Determining the Appropriate Standard of Review*

 Which standard of review applies is dependent primarily upon the terms of the plan. A plan confers discretion when it "includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator." *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1325 (9th Cir.1992), *cert denied,* 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993). In this regard, an administrator's interpretation of "disputed" terms within a plan's eligibility provisions must "not be disturbed if reason-

able." *Firestone Tire & Rubber,* 489 U.S. at 111, 109 S.Ct. 948.

 However, as previously noted, if a conflict of interest may have influenced the plan administrator's decision, then the court has the discretion to review *de novo* or with less deference to the plan administrator's decision. *Id.* at 115, 109 S.Ct. 948; *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.,* 125 F.3d 794, 798 (9th Cir.1997). The problem is how to incorporate a fiduciary's conflict of interest into the standard of review process. As recognized recently by Magistrate Judge Jelderks, the Ninth Circuit has not been wholly consistent in its approach to this issue:

> [V]arious Ninth Circuit panels have charted different paths concerning this issue, as was discussed at length in my prior opinion. *Palmer v. University Medical Group,* 973 F.Supp. 1179 (D.Or. 1997). Some panels assumed that there were certain situations in which the decision maker was inherently conflicted— e.g., when the person deciding whether to award benefits is the insurance company that must pay any benefits that are awarded—and applied a somewhat heightened level of review in such cases. Other panels adopted a burden shifting methodology which requires the claimant to present proof that the decision actually was tainted by the conflict, at which time the burden would shift to the fiduciary to establish that the decision was free of taint. If the fiduciary met that burden, or if the claimant failed to demonstrate that the decision actually was tainted by the conflict, then review would be under the abuse of discretion standard. If the fiduciary failed to refute the evidence of taint, the decision was subject to *de novo* review.

*Palmer v. University Med. Group,* 994 F.Supp. 1221, 1998 WL 59204, *12 (D.Or. Jan.16, 1998).

To reconcile this inconsistency, Magistrate Judge Jelderks developed a methodology in which the significance of the con-

flict of interest is dependent upon the type of ERISA decision being reviewed. He noted at least two general types of ERISA cases. In the typical "benefits determination" cases, the issue is an individual beneficiary's right to recover benefits under the plan, which "is usually a matter of interpreting the plan and applying that language to the facts as developed in the administrative record." *Palmer v. University Med. Group,* 973 F.Supp. 1179, 1189 (D.Or.1997). Another set of ERISA cases deals with "discretionary policy decisions" "often affecting the plan as a whole or a large number of participants" and involving "little, if any, language in the plan governing the matter in question." *Id.* In the "benefits determination" cases, he concluded that the focus should be on the merits of the decision, rather than upon the motives of the decision maker in order to avoid extensive and costly discovery.

> Instead of forcing the plaintiff in a "benefits determination" case to prove that the underlying decision was tainted by a conflict of interest (or requiring the defendant to show the decision was not tainted), the courts should simply acknowledge that in certain situations there is an inherent conflict of interest, e.g., when the decision maker is the insurance company that must pay any benefits awarded. If such a conflict of interest appears to be present, the court still reviews the decision for abuse of discretion—assuming the Plan contains the requisite language conferring discretion upon the plan administrator—but the court's review is a little more searching (depending upon the severity of the conflict) and the court is not as quick to defer to the administrator's discretion.

*Id.*

Even after the Ninth Circuit issued *Lang,* Magistrate Judge Jelderks continued to adhere to this methodology because *Lang* failed to comment on the conflict between prior Ninth Circuit cases. *Palmer,* 994 F.Supp. at 1232.

According to *Lang,* if a fiduciary has a "dual role as both the funding source and the administrator of the Plan, we are faced with an inherent conflict of interest situation, and must take this factor into account." *Lang,* 125 F.3d at 798. However, the review is still "under the traditional abuse of discretion standard unless it appears that the conflict may have influenced the decision." *Id.* To show that the conflict may have influenced the decision, a beneficiary "must come forward with 'material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary.'" *Id.,* quoting *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1322 (9th Cir.1995). In that event, the plan must produce evidence that the conflict of interest did not affect its decision to deny benefits. If the plan fails to carry that burden, then review becomes *de novo.*

■ In other words, even if a plan administrator has an inherent financial conflict, a beneficiary is required to produce evidence that the administrator's self-interest actually caused a breach of its fiduciary obligations in order to possibly trigger *de novo* review. Such evidence is not difficult to produce if the administrative record contains evidence of bias or bad faith. For example, in *Lang,* the beneficiary met her initial burden because the fiduciary gave inconsistent reasons for denying benefits to plaintiff, indicating "that its decision was affected by self-interest." *Id.* at 799. However, aside from considering evidence found in the administrative record, the Ninth Circuit has given no guidance on what evidence will suffice and how a beneficiary can obtain such evidence.

## II. *Discretion Conferred Upon Paul Revere*

The 1992 policy did not expressly grant discretion to Paul Revere to make benefits determinations. However, the 1996 policy

contains discretionary language in the ERISA Attachment. According to Paul Revere, the ERISA Attachment governs its decision to terminate Dames' benefits. Even if the ERISA Attachment does not apply, Paul Revere urges this court to review for an abuse of discretion because the right to make benefits determinations is inherently discretionary.

Dames responds that the benefits determination at issue is Paul Revere's October 1995 decision to pay benefits under the 24–month psychiatric disorder limitation. Because Paul Revere made this decision prior to the 1996 policy, she argues that the discretionary language in the ERISA Attachment is inapplicable. Further, because she was not given notice of the 1996 policy, she argues that the 1992 policy governs her claim.

### A. *Benefits Determination at Issue*

■ In October 1995, Paul Revere determined that Dames was entitled to benefits because of her disability. However, it also determined that those benefits would terminate after 24 months because she suffered from a psychiatric disorder. Paul Revere argues that Dames does not challenge this decision but instead challenges its January 1998 decision to terminate her benefits. This court agrees.

Paul Revere made two separate benefits determinations in relation to Dames. First, it determined that she was eligible for payment of benefits in October 1995. Then, in January 1998, it made a decision to terminate her benefits. The termination letter detailed the medical evidence which it received during the two-year time period in which it paid her benefits and then concluded that the diagnosis of fibromyalgia was not made during the benefits period. The implication is that Paul Revere would have continued to pay benefits if at that point it had determined that Dames suffered from a physical disability which entitled her to benefits. Dames disputes this decision to terminate her benefits, not the decision to pay her benefits.

Paul Revere made the decision to terminate Dames' benefits after the 1996 policy took effect. Although Dames was already receiving benefits, Paul Revere argues that the 1996 policy governs the second benefits determination, relying on *Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341 (8th Cir.1997). In *Hutchins,* after the plaintiff, a plan participant, pleaded guilty to burglary and received a prison sentence, his employer amended its long-term disability plan to exclude payment of benefits to incarcerated participants. The plaintiff did not receive benefits for the last 21 months he was in prison. Rejecting the plaintiff's argument to the contrary, the court held that welfare benefits such as disability benefits, as opposed to pension benefits, do not vest unless specifically so stated in the policy. Because the policy reserved the right for the employer to amend or terminate the plan at any time, the court found that the employer could amend the plan and change the benefits plaintiff received as long as it did so consistently with the plan's provisions. *See also Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1512–14 (10th Cir.1996) (employer retained right to change the benefits of all ERISA long-term disability plan participants, including those who were already receiving benefits). Dames argues that *Hutchins* should be limited to its facts, namely that the amendment terminated benefits to those who became incarcerated while receiving benefits. However, that distinction has no viable basis.

Although *Hutchins* is not binding on this court, it is well-reasoned and persuasive and this court will follow its lead. In this case, the 1992 policy expressly states that it can be amended if requested by the employer. Thus, Dames' benefits did not vest in October 1995 when Paul Revere began paying them. Accordingly, Dames' benefits became subject to the 1996 policy.

### B. *Express Language*

Dames next argues that even if her claim is subject to the 1996 policy, Paul

Revere has no express discretion to make benefits determinations because the ERISA Attachment is not actually part of the 1996 policy.

### 1. ERISA Attachment

This court concludes that the ERISA Attachment, which includes an express grant of discretionary authority to Paul Revere to make benefits determinations, is part of the 1996 policy. Imagebuilder requested an amendment in writing signed by the Vice President of Finance. Paul Revere issued the 1996 policy signed by its President, thereby complying with the technical requirements for amendment contained in the 1992 policy.

Dames also argues that the ERISA Attachment is not part of the 1996 policy, but may simply be a Summary Policy Description given the notation "SPD" on the bottom. However, the ERISA Attachment bears the same policy number, G–25780, as shown on the first page of the 1996 policy. Metz Aff, Ex A, p. 2. In addition, it is attached to the 1996 policy and not a separate document.

Therefore, under the 1996 policy, Paul Revere had the express discretion to make benefits determinations.

### 2. Notice of 1996 Policy

■ Dames argues that even if the ERISA Attachment is part of the 1996 policy, she did not receive notice of, and therefore is not bound by, the 1996 policy. Dames relies on 29 USC §§ 1022 and 1024, which require written notice by the plan administrator to a plan participant of material modifications or changes no later than 210 days after the plan year in which the amendment is adopted. Thus, Dames correctly argues that she should have received notice of the 1996 policy from the plan administrator, namely Imagebuilder (not Paul Revere).

However, Dames' lack of notice is insufficient to warrant invalidating the 1996 policy. "Generally substantive remedies are not available under § 1132(a) for violations of ERISA's procedural requirements without a showing of 'some significant reliance on, or possible prejudice flowing from

these reporting and disclosure violations.' " *Boucher v. Williams*, 13 F Supp 2d 84, 99 (D.Me.1998) quoting *United Paperworkers Int'l Union, Local 14 v. International Paper Co.*, 777 F.Supp. 1010, 1019 (D.Me. 1991) and citing *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3rd Cir.1995); *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir.1991); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 921 (3rd Cir.1990). Dames has not argued, and this court cannot discern, any reliance or prejudice stemming from Dames' lack of notice regarding the 1996 policy. If Paul Revere had reduced the amount of Dames' benefits pursuant to the amendment, then she may have a more persuasive argument regarding reliance or prejudice. However, the 1996 policy did not change the provision which is at issue in this case, namely the 24–month limitation on benefits for psychiatric disorders. Thus, Dames' lack of notice does not warrant a substantive remedy such as invalidating the 1996 policy.

### C. Inherent Grant of Discretion

■ Even if the ERISA Attachment is not considered as part of the 1996 policy, Paul Revere argues the policy confers inherent discretion on Paul Revere through the policy's grant of authority to Paul Revere to administer the plan, require satisfactory proof of disability, and require independent medical exams. Paul Revere relies on *Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996), in which the Ninth Circuit concluded that abuse of discretion review was triggered by a policy provision requiring that a claimant submit satisfactory proof of disability. However, in the recent *en banc* decision in *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1999 WL 246485 (9th Cir.1999), the court reversed *Snow* and found the term "satisfactory" to be ambiguous and capable of at least three different interpretations. Thus, the policy did not unambiguously confer discretion on Standard to make benefits determinations.

Here, however, the policy provides that the proof of disability "must be acceptable *to us*." Metz Aff, Ex A, p. 6. Unlike *Kearney*, in which the language did not clearly indicate whether to employ an objective or subjective standard to the term "satisfactory," this provision states that the proof of disability must meet Paul Revere's subjective standard. Thus, the policy grants Paul Revere the discretion to make determinations as to the whether a claimant has provided acceptable proof of disability which is reviewed under an abuse of discretion standard.

Further, although this court does not reach this issue, several judges in this district have concluded that factual, as opposed to legal determinations, of an administrator are entitled to review for an abuse of discretion, relying on *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir.), *cert denied*, 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). *Kelsey v. UNUM Life Ins. Co.*, Civ No. 94–1524, Opinion of Judge Marsh dated June 29, 1995; *Dennis v. Standard Ins. Co.*, Civ No 92–1043, Opinion of Magistrate Judge Ashmanskas dated March 29, 1993; *West v. Blue Cross–Blue Shield*, Civ No 91–581, Opinion of Magistrate Judge Dale dated October 1, 1991.

### III. *Conflict of Interest*

■ Dames argues that despite any grant of discretion to Paul Revere, this court should employ a *de novo* review because Paul Revere has an inherent conflict of interest acting as both the claims administrator and claims payor. Under *Lang*, this type of conflict is insufficient to trigger *de novo* review without some evidence that the conflict actually tainted the decision. Dames relies on the termination letter as providing sufficient evidence of taint.

In *Lang*, the court found sufficient evidence of taint because of Standard's inconsistent positions. Standard first terminated the plaintiff's benefits because it believed that the plaintiff did not have fibromyalgia. When given proof that the plaintiff did have fibromyalgia, Standard then required the plaintiff to make a showing that fibromyalgia in and of itself was disabling. The Ninth Circuit found these inconsistent positions constituted "material, probative evidence that its decision was affected by self-interest." *Lang*, 125 F.3d at 799.

Dames argues that her case is strikingly similar to *Lang*, but it is not. Paul Revere first determined that Dames suffered from a psychiatric disorder. Then, when presented with evidence that she had fibromyalgia, it stated in the January 1998 termination letter that: "Although Dr. Sultany and Dr. Barkhuizen's notes from October 13, 1997 and October 30, 1997, respectively would suggest fibromyalgia as the current diagnosed impairment, this diagnosis was not described during your 24 month benefit period." Metz Aff, Ex E, p. 1. Dames characterizes this conclusion as patently false since her 24–month benefit period did not end until October 31, 1997, after the diagnoses of Drs. Sultany and Barkhuizen. Even if Dames is correct, Paul Revere argues that this conclusion is not inconsistent with its prior position. In other words, Paul Revere may have been wrong, but not necessarily because of its self-interest.

The termination letter describes all of the medical evidence that Paul Revere received during Dames' benefits period. Paul Revere notes that previous medical assessments concluded that Dames suffered from depression and acknowledges Drs. Sultany's and Barkhuizen's assessments, but concludes that they were not timely submitted. This is exactly the type of discretionary decision which Paul Revere is entitled to make and is not by itself sufficient evidence of taint. Whether this decision is an abuse of discretion cannot be determined without an examination of the full administrative record which is not yet before this court.

Because Dames has not produced sufficient material and probative evidence that Paul Revere's inherent financial conflict tainted its benefits determination in her

case, this court will review Paul Revere's decision under the abuse of discretion standard.

## IV. *Discovery*

As noted above, discovery in ERISA cases is very limited. If Dames had produced evidence that Paul Revere's benefits decision was tainted, she would have been entitled to limited discovery to flesh out that conflict. However, she has not met that burden. Further, *Kearney* makes clear that except under rare circumstances, even *de novo* review is limited to the administrative record. Thus, Dames' requested discovery is not warranted.

## ORDER

For the reasons set forth in the accompanying Opinion, The Paul Revere Life Insurance Company's ("Paul Revere") partial motion for summary judgment (docket #19) is GRANTED. This court will review Paul Revere's claim decision under the arbitrary and capricious standard.