Donna HELSING, Plaintiff,

v.

STANDARD INSURANCE COMPANY, an Oregon corporation, Defendant.

No. CIV.99–1216–JO.

United States District Court, D. Oregon.

June 5, 2001.

Gene Barry Mechanic, Giles H. Gibson, Goldberg Mechanic Stuart & Gibson, Portland, OR, for Plaintiff.

Andrew M. Altschul, Paul C. Buchanan, Stoel Rives, Carol J. Bernick, Davis Wright Tremaine, Portland, OR, for Defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiff Donna Helsing brings this action against defendant Standard Insurance Company pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff seeks to recover benefits under a long term disability insurance plan defendant administers on behalf of plaintiff's former employer, Williams Controls, Inc.

This is the second round of summary judgment motions in this case. In the earlier proceedings, the parties filed cross-motions for summary judgment on the issue of the standard of review this court must apply in reviewing defendant's decision to deny benefits. In an opinion issued in December 2000, I concluded that the proper standard and scope of review is abuse of discretion. *See Helsing v. Standard Insurance Company,* 2000 WL 1877634 (D.Or. Dec. 27, 2000).

The case is now before the court on defendant's motion for summary judgment on the merits (# 100). For the reasons explained below, defendant's motion is granted.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v.*

*Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

### DISCUSSION

The parties are familiar with the factual and procedural background giving rise to the present litigation, and I will recite portions of the record only as necessary to clarify the discussion below.

 Before turning to the parties' arguments, it bears emphasizing that my review under the abuse of discretion standard is limited and requires substantial deference to the ERISA plan administrator's decision. *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1322–23 (9th Cir. 1995). A plan administrator abuses its discretion only when it "make[s] a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact." *Atwood,* 45 F.3d at 1323–24 (*citing Taft v. Equitable Life Assur. Soc.,* 9 F.3d 1469, 1472–73 (9th Cir. 1993)).

Plaintiff contends that defendant abused its discretion in two respects. First, she contends that defendant misapplied the plain terms of the LTD plan; specifically, the definition of "disability." Second, she contends that defendant denied her claim on grounds that are not supported by substantial evidence in the administrative record. I address these arguments in turn.

1. *Defendant's Application of Plan Terms*

 Defendant's long term disability benefits ("LTD") plan provides benefits for 24 months to an eligible employee who is unable to perform his or her "own occupation." To continue receiving benefits after that time, the employee must be unable to perform "all occupations." As relevant, defendant's LTD policy provides:

1. Until LTD Benefits have been paid for 24 months, you are only required to be DISABLED from your own occupation.

 You are DISABLED from your own occupation if, as a result of SICKNESS, ACCIDENTAL BODILY INJURY, or PREGNANCY, you are EITHER:

 a. Unable to perform with reasonable continuity the material duties of your own occupation; OR

 b. Unable to earn more than 80% of your INDEXED PREDISABILITY EARNINGS while working in your own occupation.

Affidavit of Jeffrey Webb ("Webb Aff."), Exhibit 2, p. 10.

Plaintiff argues that defendant failed to apply the plain terms of the LTD plan by allegedly failing *ever* to consider whether Plaintiff's frequently recurring respiratory illnesses preclude her from working with "reasonable continuity." Plaintiff's Opposition, pp. 16–17 (emphasis in original). Thus, plaintiff contends that defendant ignored or misapplied the definition of "disability" set forth in subparagraph a. above.[1] That argument is not borne out by the administrative record.

The record reveals that defendant engaged in two full evaluations of plaintiff's claim, in 1996–97 and 1999. In a letter dated January 5, 1997, summarizing his first review of plaintiff's medical records, defendant's independent medical consultant, Dr. Emil Bardana, opined that, among other things,

---

1. Subparagraph b. of the definition is not at issue in this case.

I see no reason to limit [plaintiff] as a storekeeper regardless of her employer. She does have more respiratory infections for which antibiotics may be useful. However, this is not a reason to disable the patient in terms of her own occupation. *I am not impressed that she is in any way limited from conducting her occupation on a full time basis.*

Webb Aff., Exhibit 1, p. 299 (emphasis added).[2]

On January 15, 1997, in a letter affirming the denial of benefits following review by the Quality Assurance Unit, defendant informed plaintiff that

To qualify for LTD benefits you must provide written satisfactory proof that you meet the definition of disability as set forth in the Williams Control group policy. This means that as a result of sickness, injury or pregnancy, *you must be unable to perform with reasonable continuity the material duties of your own occupation as a Stores Keeper*, not only for Williams Control but for other employers in the general economy, as well.

&ast; &ast; &ast; &ast; &ast; &ast;

We do not dispute that you may continue to have recurrent upper respiratory infections. However, the medical evidence does not support that your condition is of a severity *to prevent you from performing the material duties of your own occupation of Stores Keeper. Based upon our review of all the medical information in your file, we do not find that you meet the definition of disability* * * *.

Webb Aff., Exhibit 1, pp. 209–10 (emphasis added).

On June 10, 1999, in connection with defendant's second evaluation of plaintiff's

LTD claim, Jeffrey Webb wrote a memorandum to physician consultant George Spady, M.D., asking him to review her file and to answer (among others) the following questions:

1. Does the medical information and test results in the file support that the [plaintiff] was unable to perform her own occupation, as described in the yellow-tabbed job analysis form, when she ceased work in October of 1995?

2. If so, does the documentation substantiate that the [plaintiff] would be unable to perform with *reasonable continuity* her own occupation through October of 1998?

In his response, Dr. Spady stated that in his opinion, plaintiff's episodes of sinus drainage and infections would not preclude her from her stated occupation, and that

she may have had some period of time where she was limited for one or two months in or around October 1995, however, I do not see that she had other significant long-term problems *where she wouldn't be able to perform her stated occupation in an appropriate fashion.*

Webb Aff., Exhibit 1, pp. 74, 72 (emphasis added).

Following his second review of plaintiff's file, which included additional medical records, Dr. Bardana issued an extensive written assessment. As relevant to plaintiff's contention that defendant failed to consider her ability to work with "reasonable continuity," Dr. Bardana acknowledged that

it appears that [plaintiff] has been susceptible to recurrent respiratory infections since childhood. * * * [S]tarting

---

**2.** Exhibit 1 consists of the entire administrative record. To simplify reference to page numbers, I will cite to the "SIC" number located on the lower right corner of each page.

in adolescence, she had problems with chronic rhinosinusitis which persisted into adult life and into the present. She appears to be somewhat susceptible to upper respiratory infections that are usually viral in nature and which may occasionally be complicated with bacterial superinfection of the sinuses and bronchi, i.e., acute bronchitis and sinusitis. * * * During these infections she is frequently unable to work and has lost much time.

Webb Aff., Exhibit 1, p. 56. Significantly, however, Dr. Bardana then made the following assessment:

[Plaintiff] is an individual who has recurrent upper respiratory infections in the form of rhinosinusitis as well as episodes of tracheobronchitis. She is an individual who copes with these infections very poorly, sees her physician or other providers very frequently, often making significant complaints with very little objective data to support a significant amount of morbidity from these infections. In general, she persists with these complaints to the point where antibiotics or other kinds of medications are started generally on rather nonspecific characteristics such as a history of purulent sputum without culture or radiologic evidence of significant infection. Hence, *these infections have resulted in significant time loss not so much because they were so compelling in nature, but that [plaintiff] simply copes very poorly with these infections and tends to suffer a great deal more than would be expected by most patients her age with similar kinds of problems.* The fact that she has recurrent rhinosinusitis and/or bronchitis and perhaps even mild bronchial asthma *should not preclude her from the performance of sedentary light or medium work.* The key in [plaintiff's] capacity to hold a job is her inability to cope with these infections and to seek medical care bordering on the point of excess

and to suffer a significant morbidity in terms of time loss from work, thus taxing any employer's patience to retain her in any particular job description. *It is not so much the gravity of her various ailments that limit her capacities to perform her own job, but her inability to cope with these respiratory infections in such a way as to lose an excessive amount of time from the job.*

Webb Aff., Exhibit 1, pp. 57–58 (emphasis added).

On September 16, 1999, defendant wrote plaintiff's counsel affirming denial of her claim and informing him that it had forwarded her file to Quality Assurance for an independent review. Defendant advised counsel that "for [plaintiff] to be eligible for LTD benefits, she must be unable to perform the material duties of her occupation of a Store Keeper on *a reasonably continuous basis.*" Webb Aff., Exhibit 1, p. 13 (emphasis added). Defendant explained that it did not find plaintiff's physicians' recommendations that she remain off work to be supported by medical evidence and (summarizing Dr. Bardana's report) further explained that:

We want you to understand that we are not denying that [plaintiff] has frequently been diagnosed and treated for recurrent upper respiratory infections. However, the objective findings present in her record when she was experiencing these infections *did not support or explain why she would be unable to work.* * * *

Therefore, as we do not find sufficient evidence to support that [plaintiff] is precluded from performing the duties of her own occupation, she still does not meet the definition of disability and her claim remains denied.

Webb Aff., Exhibit 1, pp. 16–17 (emphasis added).

After further review by the Quality Assurance Unit, in the final denial letter to plaintiff's counsel dated November 12, 1999, defendant, among other things, cited Dr. Bardana's report, stating:

> Dr. Bardana recognizes that [plaintiff] has recurrent upper respiratory infections and possibly mild bronchial asthma. He has concluded, however, that these conditions should not preclude the performance of sedentary, light or medium level work. * * *.
>
> As noted earlier, your client has a well-documented history of treatment for respiratory conditions and has missed significant time from work. We understand that during periods of exacerbation, she would be more comfortable not working. However, *we do not find that the limitations and restrictions on the basis of her respiratory condition were of the severity to have prevented your client from continuing to perform her work activities.*

Webb Aff., p. 489 (emphasis added).

The record plainly demonstrates that defendant was, as it contends, "mindful of the 'reasonable continuity' provision"[3] in evaluating plaintiff's claim, in requesting opinions from consulting physicians, and in communicating its reasons for denial to plaintiff and her counsel. That Drs. Bardana and Spady did not phrase their reports and opinions in the exact language of the LTD plan definition of disability does not mean, as plaintiff contends, that they "failed to ever consider" that definition in evaluating plaintiff's medical condition. Indeed, the excerpts from the record quoted above compel the opposite conclusion. Consequently, I find that defendant properly applied the relevant LTD plan provisions.

**2. *Defendant's Reliance on Dr. Bardana's Opinions***

■■ Plaintiff next contends that defendant's decision is not supported by substantial evidence. Specifically, plaintiff argues that defendant abused its discretion in basing its decision on the opinions of its independent consultant, Dr. Bardana, rather than on the opinions of plaintiff's treating physicians. As I observed in my earlier opinion in this case, however, "the power to choose between medical sources that have rendered different opinions is the kind of discretion to which an administrator is entitled." *Helsing v. Standard Insurance Company, supra,* 2000 WL 1877634 at *3 (*citing Dames v. The Paul Revere Life Insurance Company,* 49 F.Supp.2d 1194, 1202 (D.Or.1999)); *see also Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 482 (9th Cir. 1990)(not clearly erroneous for administrator to accept testimony of its medical consultant); *Fergus v. Standard Insurance Company,* 27 F.Supp.2d 1247, 1254 (D.Or.1998)("Accepting the opinion of the insurance company's medical consultant over the opinion of the treating physician is not clearly erroneous").

Faced with conflicting medical opinions, defendant was entitled to accept the opinions of its independent medical consultants over those of plaintiff's physicians, and to do so was not an abuse of discretion. Moreover, the evidence on which defendant did choose to rely was of the kind that " 'reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.' " *Fergus,* 27 F.Supp.2d at 1255 (*quoting Snow v. Standard Ins. Co.,* 87 F.3d 327, 332 (9th Cir. 1996)). Consequently, this court must defer to defendant's conclusion that plaintiff

---

**3.** Defendant's Reply, p. 4

was not disabled within the meaning of the LTD plan definition of disability.

## CONCLUSION

Defendant's motion for summary judgment on the merits (# 100) is granted and this action is dismissed. Any other pending motions are denied as moot.